Irene GASAWAY et al., Plaintiffs,

v.

Georgia McMURRAY, Individually and as Commissioner of the Agency for Child Development and Jule M. Sugarman, individually and as Commissioner of the Human Resources Administration of the City of New York, Defendants.

No. 73 Civ. 874.

United States District Court,
S. D. New York.

April 2, 1973.

John C. Gray, Jr., Brooklyn Legal Services, Corp. B., Brooklyn, N. Y., Community Action for Legal Services, Inc., New York City, for plaintiffs; Janet Benshoof, New York City, and Marcia Cleveland, of counsel.

Norman Redlich, Corp. Counsel, New York City, for defendants; Michael S. Cecere, Monsey, N. Y., Henry Adler, James Abramson, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

In this action plaintiffs attack the method by which the New York City agency administering the City's day care program has terminated funding the Evergreen Day Care Center ("Evergreen"). They claim that the procedure employed in terminating the funding of Evergreen denies them due process and violates both the Social Security Act and regulations of the United States Department of Health, Education and Welfare ("HEW").

Plaintiffs, other than Charlene Pridger, are members of the Board of Directors of Evergreen. Charlene Pridger, is the parent of a child attending Evergreen and is representative of other parents of Evergreen children. Their complaint seeks declaratory and injunctive relief under the Civil Rights Act, 42 U.S.C. § 1983 and the Social Security Act, 42 U.S.C. § 601 et seq. Defendants are the Commissioner of the Agency for Child Development ("ACD") and the Commissioner of the Human Resources Administration of the City of New York.

An evidentiary hearing was held before this Court in March, 1973 on plaintiffs' motion for a preliminary injunction. For the reasons discussed below, the Court grants plaintiffs' motion for a preliminary injunction and denies defendants' motion for an order dismissing the complaint.

Title IV, part A of the Social Security Act, 42 U.S.C. § 602 et seq. (1972), guarantees to complying states reimbursement of 75% of all funds spent by the state on its social services program. The New York State plan, including day care services, was approved by HEW. The plan authorizes local officials to "purchase" day care services from private non-profit corporations. N.Y. Social Services Law § 410 3(a) (McKinney's Consol.Laws, c. 55, 1972). ACD, created by a New York City Executive Order,[1] is a division of the Human Resources Administration of the City of New York, and is the local agency responsible for the day care program funded under Title IV, part A and the

1. City of New York Executive Order No. 38, July 1, 1971.

State plan. See N.Y. Social Services Law § 410–b (McKinney 1966).

The City's day care program is designed to enable qualified parents to maintain gainful employment while their pre-school age children are properly cared for and instructed. A center providing day care services which is qualified to receive funds may secure "sponsorship" by ACD. ACD reviews the facilities and program of the center, and if qualified, sends a "letter of intent to fund" to the center. Evergreen was funded by ACD from May, 1971 until the present dispute arose.

The gravamen of plaintiffs' complaint is that ACD froze Evergreen's checking account, announced that the facility would be closed, and ceased paying Evergreen's bills as of February 28, 1973, without a proper due process hearing [2] as required by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and the regulations promulgated by HEW as authorized by the Social Security Act, 42 U.S.C. § 1302 (1969).[3]

Defendants, on the other hand, contend that "gross fiscal irregularities" and health violations, caused ACD to cease "purchasing services" from Evergreen. Defendants argue that plaintiffs have not shown a protected interest which ACD has taken from them without due process of law. Rather, the interim funding guidelines governing the relationship between ACD and Evergreen provide for a maximum of two years of interim funding. Therefore, the defendants argue that the "purchase of services" agreement here has terminated "according to its own provisions".

## I

■ This Court has jurisdiction of the subject matter of this action under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). The plaintiffs have alleged deprivation of their due process rights under the Fourteenth Amendment resulting from the cessation of funding without a pre-termination hearing. In welfare cases jurisdiction under § 1343(3) will properly lie so long as a colorable constitutional claim is raised. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The facts as set forth here present such a colorable claim.

In reaching this conclusion the Court notes that the parents and children using the Evergreen facilities are the real aggrieved parties. Defendants argue that Evergreen, as a corporate entity,[4] receives the benefits of ACD funding directly; therefore, at best a state cause of action for breach of contract is stated here.[5] However, the real beneficiaries

2. Although the members of the board of Evergreen received letters advising them of a "show cause" hearing on December 8, 1972, defendants have not contended, and this Court does not find, that this meeting satisfied the full requirements of a pre-termination due process hearing.

3. See, 45 C.F.R. 205.10, 220.11 (1972).

4. There is no clear proof in the record as to the legal status of Evergreen Day Care Center. In defendant McMurray's affidavit to the Court, however, the center is referred to as a corporation.

5. Defendants contend that the "contract" with Evergreen had expired and simply was not renewed. The facts do not support this contention. A letter from the Commissioner of ACD was received by Evergreen on May 2, 1972, which confirmed that the funding of Evergreen commenced as of May, 1971. This letter also advised Evergreen that continued funding was "based upon (Evergreen's) adherence to the Guidelines for the Interim Funding Program." The *Guidelines* state that interim funding is limited to two years. However, since the *Guidelines* were promulgated in April, 1972, it would appear that ACD could not terminate the relationship with Evergreen without being in breach of contract until April, 1974. In addition, testimony of the director of the Day Care Consultation Service indicated that ACD, in many cases, has continued interim funding past the two year limit.

of a viable day care center program are the parents and children who use it. They are the aggrieved parties when the funding of the center ceases. Evergreen is merely the conduit through which benefits are passed on to working families. The Court believes that the manner in which benefits are ultimately received by plaintiffs is not a significant factor in evaluating their constitutional allegations.

Defendants also contend that benefits to the parents and children have not been terminated because the children and staff of Evergreen have been offered space in a nearby center, pending the completion of a new center which will eventually house them. Thus, defendants conclude that no colorable claim has been stated under Goldberg v. Kelly, *supra.* In that case, the Supreme Court held that New York City welfare recipients faced with the termination of their benefits were entitled to a pre-termination evidentiary hearing. The Court determined that the due process challenge "cannot be answered by an argument that public assistance benefits are 'a "privilege" and not a "right" ' " 397 U. S. at 262, 90 S.Ct. at 1017, and concluded that "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." 397 U.S. at 264, 90 S.Ct. at 1018.

The Court finds that substantial benefits would be lost by relocation at the neighboring center, the Irving Place Child Development Center ("Irving"), under the circumstances as presented at the hearing. The Chairman of the Parents Advisory Committee of Irving testified that there was great hostility to the proposed transfer from parents of children presently at Irving. In addition, this witness testified that 86 pre-school children attend Irving, more than the center is actually authorized to enroll. No evidence was presented by defendants to refute these allegations. Under these circumstances, it can hardly be argued by defendants that no benefits to Evergreen parents and children would be lost by relocation at Irving.

■ The Court therefore finds that the loss of adequate day care facilities without a due process pre-termination hearing as established in Goldberg v. Kelly, *supra,* presents a colorable constitutional claim under 28 U.S.C. 1343(3).

■ Having determined that jurisdiction is established under Section 1343(3) on the constitutional claim, the Court assumes pendent jurisdiction over the statutory claim that the "fair hearing" requirements of the Social Security Act, 42 U.S.C. § 602(a)(4), as implemented by regulations promulgated by HEW, 45 C.F.R. § 205.10 (1972), have been violated by the actions of ACD.[6] See Almenares v. Wyman, 453 F.2d 1075 (2nd Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). It cannot be questioned that the constitutional and statutory claims herein have the "common nucleus of operative fact" demanded by United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), or that plaintiffs ordinarily would be expected to try their constitutional and statutory claims "in one judicial proceeding." *Id.*

II

■ Before considering the merits, the Court must determine whether this case should properly proceed as a class action. As previously noted, plaintiff

See also Gonzalez v. Freeman, 118 U.S. App.D.C. 180, 334 F.2d 570, 574 (1964), where the Court said:

Thus to say that there is no "right" to government contracts does not resolve the question of justiciability. Of course there is no such *right;* but that cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person or that such person is not entitled to challenge the processes and the evidence before he is officially declared ineligible for government contracts.

6. Thus, the Court need not reach the question of whether the jurisdictional amount has been satisfied in this litigation.

Pridger and her child represent all other parents and children served by Evergreen. The Court finds that the prerequisites and requirements of Rule 23, Fed.R.Civ.P., have been met.

Joinder of all members of the class would be impracticable as there are about one hundred parents and children served by the center. On both the constitutional and statutory claims common questions of law and fact have been presented. In particular, procedures of ACD and the applicability of the fair hearing requirements, are questions common to the class. The claims of the representative parties are also typical of the claims of the class. The representative parties will fairly and adequately protect the interests of the class. Finally, defendants have acted "on grounds generally applicable to the class," making injunctive and declaratory relief with respect to the class appropriate. Rule 23(b)(2), Fed.R.Civ.P.

### III

The statutory claim will be considered first so that the constitutional claim need not be reached unnecessarily. Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970) (*per curiam*). The Court has the power to permit plaintiffs to proceed on behalf of their class for injunctive relief on their pendent claim. Almenares v. Wyman, 453 F.2d 1075, 1084–1085 (2nd Cir. 1971), cert. denied, 405 U.S. 944, 92 S. Ct. 962, 30 L.Ed.2d 815 (1972).

Defendants' reasons for their failure to provide a fair hearing as required by the federal regulations, have already been discussed. In review, defendants argue first that there has been no termination of services requiring a hearing because of the offer of the use of the Irving Center. The Court has determined that a move to Irving would, in effect, be a cessation of services because of the hostility of the parents of children at Irving, and the overcrowded conditions that exist there.

Second, defendants assert that plaintiffs' claim sounds in contract only. However, the Court is not constrained to view the relationship between ACD and Evergreen so narrowly. The Supreme Court in Goldberg v. Kelly, *supra*, affirmed a three-judge panel of this Court and quoted from its opinion as follows:

> By hypothesis, a welfare recipient is destitute, without funds or assets . . . . Suffice it to say that to cut off a welfare recipient in the face of . . . 'brutal need' without a prior hearing of some sort is unconscionable, unless overwhelming considerations justify it. Goldberg v. Kelly, 397 U.S. at 261, 90 S.Ct. at 1017, quoting from Kelly v. Wyman, 294 F. Supp. 893, 899, 900 (S.D.N.Y.1968).

The opportunity for a parent to place his child in day care facilities is no less a "brutal need" than the opportunity to receive direct welfare payments, when the parent must work outside of his home for a substantial part of the day.

Defendants cannot escape the fair hearing requirements of the aforementioned regulations of HEW, regulations "largely embodying the due process requirements enunciated in *Goldberg*", Almenares v. Wyman, *supra* 453 F.2d at 1079 n. 4, by insisting that only a contractual relationship exists between ACD and Evergreen.

■ Finally, the New York Social Services Law provides that "(d)ay care may be provided by a social services official either directly or through purchase." Social Services Law, § 410(3)(a) (McKinney 1972). Whether or not recipients of day care services are entitled to a fair hearing upon the termination of benefits should not depend upon which alternative is chosen. The Court, therefore, finds that plaintiffs are entitled to a fair hearing as provided for in 45 C.F.R. § 205.10 before the termination of Evergreen's funding.

Accordingly, the Court has determined that plaintiffs' motion for a preliminary injunction requiring the defendants to make all payments due Evergreen and continuing the funding of Evergreen until a pre-termination due process hearing is held, should be granted. In so holding, the Court has found that plaintiffs

would be irreparably injured by further delay in funding Evergreen which cannot operate any longer without ACD sponsorship.

The Court also concludes that plaintiffs have established a probability of success on the merits. At the hearing, this Court heard testimony that substantial efforts had been made by Evergreen to correct the health code violations which existed at the center. Furthermore, the "gross fiscal irregularities" which occurred at Evergreen were the product of a single person's indiscretions. This individual is no longer connected in any way with the center. In view of the fact that a new center will be ready for occupancy in the near future and that no other center appears to be equipped to handle the Evergreen children at this time, it would seem imprudent for the center to be closed now. Although these decisions are best left to those with expertise in this area, the Court is satisfied that plaintiffs have established a sufficient probability of success for the Court to grant a preliminary injunction.

Plaintiffs' motion for a preliminary injunction is granted. Defendants' motion to dismiss is denied.

Settle order on notice.