Sandra **GREER**, Individually and on behalf of all other persons similarly situated, Plaintiff,

and

Juanita **Rodriguez**, Rosa **Velasquez**, Ana **Otero**, Maria **Burgos**, Consuelo **Nunez**, Margie **Goodman**, and Rosa **Gonzalez**, Individually and on behalf of all other persons similarly situated, Plaintiffs-Intervenors,

v.

Barbara B. **BLUM**, Individually and in her capacity as Commissioner of the New York State Department of Social Services, and Blanche Bernstein, Individually and in her capacity as Commissioner of the City of New York Department of Social Services, Defendants.

No. 78 Civ. 1310.

United States District Court,
S. D. New York.

Nov. 3, 1978.

Michael D. Hampden, The Legal Aid Society, New York City, for plaintiff and plaintiffs-intervenors; Ian F. Feldman, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, for defendant Blum; Barry R. Fertel, Deputy Asst. Atty. Gen., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant Bernstein; Robert Deutsch, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant Blum, Acting Commissioner of the New York State Department of Social Services ("State"), moves to dismiss the complaint; the proposed intervenors move to join this action; and plaintiff Sandra Greer moves to certify this as a class action.

Greer's amended and supplemental complaint, which the Court hereby grants leave to file, challenges alleged policies and practices of the State and of the New York City Department of Social Services ("the agency") which reduce or discontinue benefits provided under the Aid to Families with Dependent Children ("AFDC") program on the ground that there is a "man in the house."

Greer alleges that from 1974 to June 1977, she received AFDC benefits, but in mid-June 1977, her benefits were terminated after an acquaintance incorrectly informed the agency that Greer's husband was residing with Greer. At a conference with a local agency official on July 17, 1977, Greer was told that the termination was based upon the information received from her acquaintance. The agency representative stated that she would request a State Fair Hearing for Greer, and plaintiff, relying on this statement, did not request one herself. In December 1977, no State Fair Hearing having been held, Greer reapplied twice for public assistance; in both instances her application was denied. Plaintiff then requested and received a Fair Hearing on February 8, 1978. At the hearing, the only evidence presented by the agency was a summary of the acquaintance's statement and an indication from the United States Postal Service that mail addressed to Greer's husband was delivered to Greer's home. Plaintiff denied that her husband was living with her and presented his rent receipts for a different apartment. On March 14, 1978, the State reversed the agency decision and awarded plaintiff retroactive benefits to October 1977. Plaintiff has initiated an Article 78 proceeding in New York State Supreme Court, claiming that retroactive benefits should have been awarded as of June 1977, the original termination date.

Plaintiff contends that the agency reduces or discontinues public assistance on evidence which is insufficient to sustain the action in a subsequent State Fair Hearing and proceeds to Fair Hearings with such insufficient evidence. She claims that the State has violated the due process guarantee of the Constitution and relevant federal and state statutes and regulations by (1) affirming agency determinations for which there is insufficient evidence; (2) authorizing and encouraging wrongful agency actions by way of Informational Letter 76 INF 13, which purports to inform local offices of evidentiary requirements in "man-in-the-house" cases; and (3) failing to grant Greer a Fair Hearing after her alleged July 17, 1977 request. In addition to declaratory and injunctive relief, Greer requests punitive damages against defendant Bernstein, Commissioner of the New York City Department of Social Services, who promulgated the Informational Letter when she was State Deputy Commissioner.

### THE STATE'S MOTION TO DISMISS

The State moves to dismiss plaintiff's complaint on the grounds that the case is moot; that the federal constitutional claim is so insubstantial as to deny this Court jurisdiction under 28 U.S.C. § 1343(3); that adequate state procedures exist to remedy plaintiff's claims which caution against the Court's acceptance of jurisdiction; and that the complaint fails to allege facts sufficient to sustain any claims against the State.

■ Because the State reversed the agency case action in Greer's case, plaintiff's challenge to the alleged practice of the State in *affirming* agency actions based on insufficient evidence is moot. This is not a case in which the defendant sought to frustrate review by settling the case of the individual claimant;[1] nor are the plaintiff's claims "capable of repetition yet evading review."[2] Appropriate plaintiffs, those whose adverse agency determinations have been affirmed by the State, do exist, as the complaints of several of the proposed intervenors attest. Plaintiff contends that although her individual claim may have become moot, case law supports sustaining a complaint in a class action when other members of the class retain live controversies.[3] The rationale underlying these cases is unavailing here because the Court determines that this case should not proceed as a class action. Moreover, Greer was never a member or proper representative of the class of those persons affected by the alleged state practice.[4] Finally, the claim that the State has a policy of affirming agency actions on insufficient evidence is contradicted by the various complaints submitted to this Court, which allege several instances apart from Greer's in which the State has reversed the agency determination. In sum, plaintiff's claim against the State for affirming agency actions is dismissed.

The Court also dismisses plaintiff's claims with respect to the State's Informational Letter. According to plaintiff, the Letter, which purports to clarify the different evidentiary standards required for case actions at the agency level and for review of such actions at the state level, sets forth "the subjective standard of 'what is felt to be sufficient corroborating evidence' " rather than "presenting objective legal standards or guidelines for initiating 'case actions.' " Further, plaintiff contends that the Letter allegedly is deficient because it fails to inform agency employees that decisions in a Fair Hearing must be based on "substantial evidence" and a "residuum of legally competent. evidence" and that claimants must be given an opportunity to cross-examine agency witnesses with personal knowledge of the material facts. Plaintiff charges that the result, "as reflected in the practice and policy of the agency, is to encourage the agency to initiate case actions when it lacks reasonably sufficient evidence to sustain the action at a fair hearing, and to encourage the agency to proceed with fair hearings where it lacks reasonably sufficient evidence to uphold the case action at the fair hearing." In addition, it is alleged that defendant Bernstein in promulgating the Letter "knew or should have known" that it would encourage policies and prac-

1. *See, e. g., United States v. W. T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Andujar v. Weinberger,* 69 F.R.D. 690, 692–93 (S.D.N.Y.1976); *Torres v. New York State Dep't Labor,* 318 F.Supp. 1313, 1316–17 (S.D.N.Y.1970).

2. *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

3. *Sosna v. Iowa,* 419 U.S. 393, 399–403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Frost v. We-* inberger, 515 F.2d 57, 62–65 (2d Cir. 1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Andujar v. Weinberger,* 69 F.R.D. 690, 696–97 (S.D.N.Y.1976); *Lugo v. Dumpson,* 390 F.Supp. 379, 381 (S.D.N.Y.1975); *Torres v. New York State Dep't Labor,* 318 F.Supp. 1313, 1317 (S.D.N.Y.1970); *Gaddis v. Wyman,* 304 F.Supp. 713, 715 (S.D.N.Y.1969).

4. *Compare Washington v. Wyman,* 54 F.R.D. 266, 271–72 (S.D.N.Y.1971) *with Gaddis v. Wyman,* 304 F.Supp. 713, 714–15 (S.D.N.Y.1969).

tices violative of the constitutional rights of welfare recipients.[5]

■ Plaintiff's vague assertion of a due process violation apparently turns on the belief that the Constitution requires the agency to apply the same evidentiary standard in making its initial determination to reduce or discontinue benefits as the State applies in reviewing the decision at the Fair Hearing. This Court does not believe that the Constitution so hampers the state public assistance programs.

■ In the landmark case of *Goldberg v. Kelly*,[6] the Supreme Court stressed the "grievous loss" suffered by the welfare recipient whose relief was wrongfully terminated,[7] and held that due process mandated a hearing prior to termination at which the recipient could present evidence and confront and cross-examine adverse witnesses.[8] In response to the decision, HEW promulgated regulations embodying the *Goldberg* due process rights.[9] New York has established procedures consistent with these federal requirements: in any case of proposed action to discontinue or reduce benefits, recipients must receive timely and adequate notice;[10] recipients may then request a conference with the local agency and alternatively or additionally a State Fair Hearing;[11] if the request for a hearing is timely, assistance is continued until the hearing decision is rendered.[12] Under these procedures, the "grievous loss" which lay at the heart of *Goldberg* cannot occur until *after* a Fair Hearing at which constitutionally mandated protections have been afforded.[13]

Because benefits are not discontinued until after a Fair Hearing, provided the recipient requests one, the only loss to the recipient is the time and effort required for an appearance at the hearing.[14] This loss is *de minimis*.[15] Thus, even assuming the Letter

**5.** In essence, the complaint asserts that the State Informational Letter prompts the agency to violate *state* standards of evidence. This is preeminently a question for state review; indeed, numerous Article 78 proceedings have been brought in the state courts to challenge agency and State determinations in "man-in-the-house" cases. *See, e. g., Hagood v. Berger*, 42 N.Y.2d 901, 397 N.Y.S.2d 991, 366 N.E.2d 1345 (1977); *Fore v. Toia*, 60 A.D.2d 913, 401 N.Y.S.2d 571 (2d Dep't 1978); *Ayala v. Toia*, 59 A.D.2d 739, 398 N.Y.S.2d 567 (2d Dep't 1977); *Del Valle v. Sugarman*, 44 A.D.2d 523, 353 N.Y.S.2d 215 (1st Dep't 1974). In effect, plaintiff is asking this Court to sit as an appellate state court, reviewing the proper application of state standards.

**6.** 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**7.** *Id.* at 263, 90 S.Ct. 1011.

**8.** *Id.* at 266–68, 90 S.Ct. 1011.

**9.** 45 C.F.R. § 205.10.

**10.** 18 N.Y.C.R.R. § 358.8(a).

**11.** *Id.* § 358.8(b).

**12.** *Id.* § 358.8(c)(1).

**13.** *Id.* § 358.16.

**14.** Two cases in this District have found colorable constitutional claims based on allegations of delay in receipt of welfare benefits. *See* *Perez v. Lavine*, 378 F.Supp. 1390 (S.D.N.Y. 1974) (delays due to crowded welfare offices colorably violate due process); *Nelson v. Sugarman*, 361 F.Supp. 1132 (S.D.N.Y.1972) (delay in implementing fair hearing decisions increasing benefits). *But see Perez v. Lavine*, 412 F.Supp. 1340, 1356 (S.D.N.Y.1976) (no due process violation where delay but no absolute deprivation of access to benefits). These cases are clearly distinguishable because here there is no allegation that the City and State procedures in effect deny access to benefits.

**15.** *Compare Board of Regents v. Roth*, 408 U.S. 564, 569–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) *with Goss v. Lopez*, 419 U.S. 565, 572–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) *and Fuentes v. Shevin*, 407 U.S. 67, 84–90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In the area of public assistance, *compare Gasaway v. McMurray*, 356 F.Supp. 1194, 1196–97 (S.D.N.Y.1973) (closing of day care center is loss implicating colorable constitutional claim) *and Hurley v. Van Lare*, 365 F.Supp. 186 (S.D.N.Y.1973), *rev'd on other grounds*, 497 F.2d 1208 (2d Cir. 1974), *rev'd*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975) (substantial constitutional question regarding New York State regulation effecting pro rata reduction in shelter allowance on ground of presence of "lodger" in AFDC home) *with Black v. Beame*, 419 F.Supp. 599, 608 (S.D.N.Y.1976), *aff'd*, 550 F.2d 815 (2d Cir. 1977) (no due process rights implicated in welfare family "togetherness").

influenced agency action in Greer's case,[16] she has failed to show a deprivation of liberty or property within the purview of the Fourteenth Amendment.[17] Although in this case Greer did not receive benefits for some time, the suspension was due either to her failure to request a Fair Hearing, as the defendants urge, or to the agency's failure to transmit the request, as plaintiff alleges. Whichever explanation is true, any loss of benefits cannot be attributed to the Letter.

This is not to say that a state directive which encourages the agency to initiate consistently unfounded case actions or actions based on impermissible criteria would never approach a constitutional deprivation. Suffice it to say, the Court is faced with no such allegations here. Even a casual analysis of the Letter indicates that it was issued in an attempt to improve agency determinations, making them more consistent with the dictates of due process. The stated purpose of the Letter was to "assist local districts in the attainment of two major objectives: The successful defense of a higher percentage of case actions in man in the house cases by improved investigation and preparation and a corresponding avoidance of improper case actions." Discussed at considerable length are the relevant evidentiary principles for case actions and fair hearings, including a description of the relative "quality" of direct, circumstantial, and hearsay evidence. Contrary to plaintiff's

contention, the Letter explicitly states that "substantial evidence" is necessary to sustain an administrative decision. Further, the Letter provides guidelines for agency preparation for Fair Hearings, recommending that case action be initiated only when there is evidence, "accumulated through as intensive an investigation as resources allow," that "strongly suggests the probability that the man resides in the household."

There can be no basis for a claim that the Letter fosters arbitrary or illegal action on the part of the agency. If anything, the Letter indicates a high degree of sensitivity in protecting and respecting the rights of claimants. Plaintiff's claims against the State and against defendant Bernstein with respect to the Letter are dismissed for failure to state a claim.[18]

■ Finally, plaintiff's claim that the State denied her a Fair Hearing in July 1977 is dismissed. The only allegations relevant to this claim concern an agency official's alleged promise to request a Fair Hearing for Greer and the failure to transmit the request. The complaint has no allegations linking the State to this action. In short, plaintiff's claims are not properly asserted against the State.

## THE MOTIONS TO INTERVENE

■ Rule 24(b) of the Federal Rules of Civil Procedure provides:

**16.** The link between the Informational Letter and agency action—although pleaded in conclusory terms—is tenuous at best. No specific allegations concerning the effect of the Letter upon the termination of Greer's benefits are made. Rather Greer reasons that agency decisions and *modus operandi* are influenced by the State Letter, that the Letter sets forth incorrect evidentiary standards, that Greer's termination was not based on legally sufficient evidence, and that therefore the Letter must have been a contributing factor to the wrongful termination. This causal link is further attenuated when one considers that the Letter, on its face, is advisory and informational. Indeed, the New York State Department of Social Services, in an official bulletin issued March 29, 1977, states that Informational Letters are "used to communicate materials of an informational or educational nature. They may also include notices of potential changes in program plans, policy or procedures." The bulletin distinguishes "Informational Letters" from "Admin-

istrative Releases," which "transmit changes in or interpretations concerning the programs or administrative operations" of particular agencies.

**17.** *Compare Goss v. Lopez*, 419 U.S. 565, 572–78, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) *with Board of Regents v. Roth*, 408 U.S. 564, 569–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**18.** Having failed to establish that the Letter encourages constitutional violations, plaintiff's claim against Bernstein for promulgating the Letter must also fail. There is no allegation that Bernstein acted in bad faith, with ill will, or with reckless disregard for the constitutional rights of the plaintiff. *See Silver v. Cormier*, 529 F.2d 161, 163–64 (10th Cir. 1976); *Stolberg v. Members of Bd. of Trustees*, 474 F.2d 485, 489 (2d Cir. 1973); *Vargas v. Correa*, 416 F.Supp. 266, 272 (S.D.N.Y.1976).

Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Intervention is to be freely granted;[19] however, intervention may be denied in the sound discretion of the Court.

█ The proposed intervenors contend that their legal claims are "identical to those asserted by the named plaintiff" in that each asserts constitutional and statutory violations flowing from the defendants' practices and policies of reducing or terminating AFDC benefits in "man-in-the-house" cases where the agency lacks reasonably sufficient evidence to sustain its determination at a Fair Hearing.

While on the broadest reading the claims of the intervenors and the named plaintiff are similar, carefully read, the claims turn on particular facts and circumstances that render each intervenor's action separate, distinct and individual.

The essential claim of each intervenor is that the agency, encouraged by the State, threatened to reduce or terminate or did reduce or terminate benefits on insufficient evidence. As made plain by the detailed allegations in the intervenors' proposed complaints, the evaluation of these claims turns on individual facts in each case which permit a factfinder to infer that a man resides in the household. A trial consisting of all the intervenors here would not achieve judicial efficiency or save judicial resources; the proceeding would in effect be a string of trials related only by the fact that each case was a "man-in-the-house" case.

Nor should intervention be permitted on the claims concerning the State's Informational Letter, the State's alleged policy of affirming incorrect agency actions or the alleged unconstitutionality of some procedures at the State Fair Hearing. As to each of these claims, the named plaintiff has either failed to state a claim or her claim has been rendered moot. Surely the intervenors cannot have a claim common to one that does not exist.[20] While the intervenors may state common claims in regard to policies of the State at the Fair Hearing, these claims are no longer part of this action.

### THE CLASS ACTION MOTION

█ Plaintiff seeks to represent a class "composed of all AFDC recipients in New York City whose grants the agency determines to reduce or discontinue [on] the asserted ground of a man-in-the-house where it lacks reasonably sufficient evidence to sustain the action at a state fair hearing." For reasons similar to those which lead the Court to deny intervention, this action should not proceed as a class action.

Because each class member's claim would turn on facts particular to it with respect to whether the requisite evidentiary standard was met, there is insufficient commonality of the claims;[21] nor is plaintiff's claim typical of the class members' claims.

The definition of the class also presents severe problems. In order to determine who is an appropriate class member—that is, who has lost AFDC benefits because an improper amount of evidence was presented—the Court would in effect have to determine the merits of each particular claim.[22] Finally, the plaintiff has made no

---

**19.** *Tatum v. Cardillo,* 11 F.R.D. 585, 587 (S.D.N.Y.1951); 7A C. Wright & A. Miller, Federal Practice and Procedure § 1904 (1972).

**20.** *Washington v. Wyman,* 54 F.R.D. 266, 272 (S.D.N.Y.1971).

**21.** *Dunn v. New York State Dep't Labor,* 60 F.R.D. 10, 11 (S.D.N.Y.1973). In *Dunn,* the Court held that a class action is inappropriate when plaintiffs claim that unemployment benefits have been withheld on insufficient evi-

dence. "Clearly [the claim asserted] is a question which must be decided separately for each claimant according to the facts of his case. . . . [D]etermination of this issue will be possible only as to those claimants who actually come before the Court." *Id.*

**22.** *See Metcalf v. Edelman,* 64 F.R.D. 407, 409 (N.D.Ill.1974); *Dunn v. New York State Dep't Labor,* 60 F.R.D. 10, 11 (S.D.N.Y.1973).

showing that the size of the class warrants class treatment of the claims.[23]

## CONCLUSION

The State's motion to dismiss the complaint against it is granted. The motions for intervention are denied. Plaintiff's motion for class certification is denied.

So ordered.

**23.** Because of the foregoing disposition of the class action motion, the Court need not determine whether class certification is also inappropriate on the ground that injunctive relief on behalf of one plaintiff will redound to the benefit of all class members. *See Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Feld v. Berger*, 424 F.Supp. 1356, 1363 (S.D.N.Y.1976).