**Lydia DIAZ, Individually, and on behalf of all other persons similarly situated and Alfreida Harris, Ana Sanchez and Carmen Benitez, applicants for intervention, Plaintiffs,**

v.

**Barbara BLUM, Individually, and in her capacity as Commissioner of the New York State Department of Social Services, Stanley Brezenoff, Individually, and in his capacity as Commissioner of the City of New York Department of Social Services, New York City Department of Social Services, New York State Department of Social Services, Peter Mullany, Individually, and in his capacity as Assistant Counsel to Barbara Blum, Martin Glover, Individually, and in his capacity as Supervising Hearing Officer, Arnold Mumford, Individually, and in his capacity as Director of the Melrose Income Maintenance Center, Roy Olsen, Individually, and in his capacity as Director of the Livingston Income Maintenance Center, Al Sawyer, Individually, and in his capacity as Director of the Lower Manhattan Income Maintenance Center, Ann Heasty, Individually, and in her capacity as Director of the Boulevard Income Maintenance Center, Defendants.**

No. 79 Civ. 0636.

United States District Court, S. D. New York.

Sept. 5, 1979.

Lloyd B. Silverman, Bronx Legal Services Corp. C., New York City, for plaintiff and proposed intervenors Alfreida Harris, Ana Sanchez, Carmen Benitez, Margaret Rosettos and Beth Smith, Douglass J. Seidman and Alan H. Kleinman, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, for State defendants; A. Seth Greenwald, Kenneth A. Thomas, Asst. Attys. Gen., of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for City Defendants; Joseph F. Bruno, George Sawaya, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action by Lydia Diaz, individually and on behalf of all others similarly situated, has brought in its wake a series of motions by Diaz, proposed intervenors and the defendants. Diaz and the proposed intervenors are recipients of public assistance, Aid to Families with Dependent Children ("AFDC"),[1] under various provisions of the Social Security Act. Essentially, Diaz alleges that she and others in her class have been injured by policies and practices engaged in by the New York City Department of Social Services ("City"). She charges that the City issues repeated notices of proposed reduction or termination of assistance grants without determining whether evidence exists to warrant such action, and further, that after the recipient requests a Fair Hearing[2] before the State Department of Social Services ("State"), the City routinely withdraws such notices only to thereafter renew the same notices. These practices, it is contended, are a form of studied harassment intended to deny AFDC recipients the benefits to which they are entitled and which have, in fact, had that effect. It is also alleged that it is the State's policy routinely to allow the City to withdraw its proposed notice of reduction or termination at the Fair Hearings, thereby depriving the recipient of a fair hearing and of a meaningful decision upon the merits.

Diaz, who has been separated from her husband, receives AFDC payments for herself and her three children. Her complaint in substance alleges that the City, claiming that she has received monies from her husband, has, since May 1977 to the commencement of this action in February 1979, served at least five notices upon her that it would seek recoupment of such income by reducing her semi-monthly assistance grant; that she has contested each proposed action either at a conference with the City or at a State Fair Hearing and that in each instance the City has withdrawn its notice of proposed action; that after a number of such incidents, Diaz, at a Fair Hearing held on September 28, 1978, this time represented by counsel, insisted upon a hearing and offered evidence to dispute the City's proposed reduction; that although the hearing was held, the State refused to decide the issue upon the merits but noted only that the agency had withdrawn its notice. Plaintiff alleges that on several occasions, in order to contest the City's notices at the State Fair Hearings, she has had to travel from her home to the State Office Building at 80 Centre Street, New York City; that the receipt of the repeated notices, five in all, has caused her much anxiety, confusion and emotional distress and injury; and further that she has been harmed by having to prepare for and attend the City conferences and the State Fair Hearings.

The defendants are officials of the State and City charged with the administration and enforcement of the AFDC program. The relief sought is a declaratory judgment that the alleged practices of the State and the City deprive plaintiff of her liberty and property rights without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and of her rights under the Federal Social Security Act and the New York State Social Services Law. In addition, plaintiff seeks a permanent injunction to prevent the

---

1. Aid to Families With Dependent Children, 42 U.S.C. §§ 601–610.

2. Following the landmark case of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), HEW promulgated regulations embodying due process rights. New York State established procedures consistent therewith. Thus, in any case of proposed action to discontinue or reduce benefits, recipients must re-

ceive timely and adequate notice (18 N.Y.C. R.R. § 358.8(a)); recipients may then request a conference with the local agency (City) and additionally a State Fair Hearing (18 N.Y.C. R.R. § 358.8(b)) pending which, if the request is timely, assistance is continued until a Fair Hearing decision is rendered (18 N.Y.C.R.R. § 358.8(c)(1)).

City from continuing to issue notices to reduce or terminate benefits where the case record fails to contain adequate evidence; also a directory order to the State not to permit withdrawals of notices at Fair Hearings and to conduct a meaningful Fair Hearing, and in order to assure meaningful decisions, to include at a minimum the reasons for any withdrawal. Plaintiff also seeks an award of compensatory and punitive damages by reason of defendants' alleged practices and policies which Diaz charges constitute (a) an abuse of process, (b) malicious prosecution and (c) prima facie tort.

The proposed intervenors' claims in general track the charges made by Diaz both as to notice of reduction or termination of grants allegedly without proper evidence, and as to the repeated issuance of notices based on the same charges followed by withdrawal by the City at a conference or later at a State Fair Hearing without prejudice and without a determination upon the merits.

The class sought to be certified by Diaz and the proposed intervenors are those persons who are or will be recipients from the City of AFDC benefits and who have or will receive a notice proposing a reduction or termination of grants where the City has withdrawn a prior similar notice.

The motions now before the Court are (1) by the State and City defendants to dismiss the Diaz complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted; (2) by plaintiff Diaz for class certification pursuant to Rule 23 and for leave to serve an amended complaint pursuant to Rule 12(b) to include the claims of the proposed intervenors and to add them as named plaintiffs; and (3) by each proposed plaintiff for permissive intervention pursuant to Rule 24(b) and for a preliminary injunction to enjoin action by defendants upon notices for change of grants.

We first consider the defendants' motion to dismiss the Diaz complaint under Rule 12 and upon the additional ground that her claim has been rendered moot by events occurring during the course of the instant litigation. If the latter position is upheld, we do not reach plaintiff's constitutional claim [3]—that the failure of the State to conduct a Fair Hearing on the merits and to render a final decision upon the City's claim for recoupment is a denial of due process under the Fourteenth Amendment.[4]

■ While for the purpose of a motion under Rule 12 the allegations of the complaint must be accepted as true, affidavits and exhibits submitted by the parties on plaintiff's motion for preliminary injunctive relief establish pertinent matters touching upon plaintiff's claim. It appears that following the commencement of this action, another Fair Hearing was scheduled for March 22, 1979, following receipt by plaintiff of another proposed reduction notice. Upon argument of plaintiff's motion for injunctive relief the City stipulated to withdraw this latest notice *with prejudice.* Thus the stipulation has res judicata impact [5] and the City is foreclosed from seeking reduction of plaintiff's assistance grants based upon a claim that she received monies from her husband. Upon its face this development moots plaintiff's claim for injunctive relief and a declaratory judgment. In her prayer for relief, plaintiff, among other matters, seeks a decree preventing the City from reducing assistance until the State renders a decision based upon the evidence presented at the Fair Hearing held on September 28, 1978, referred to above. A decision by the State would afford her no more protection than that resulting from

3. *Kremens v. Bartley,* 431 U.S. 119, 128, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977).

4. *But see Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Andrews v. Maher,* 525 F.2d 113 (2d Cir. 1975).

5. In seeking preliminary injunctive relief plaintiff's counsel contended "The decision that plaintiff Diaz is entitled to is a final decision, which, if not appealed, is entitled to *res judicata* effect." Memorandum of Law in Support of Preliminary Injunction, p. 11.

the withdrawal of the last notice with prejudice, which insures that her grants will not be reduced based upon any claim of payments made by her husband and dispenses with the need for any attendance by plaintiff at a Fair Hearing. In end result her claim no longer presents a live controversy as to any alleged deprivation of constitutional rights.[6] Thus, all that remains of plaintiff's claim is the inconvenience and loss of time entailed in preparation for and attendance at the conferences and Fair Hearing proceedings. However, this loss is de minimis.[7] Clearly this claim is of insufficient substance to support federal jurisdiction under 28 U.S.C., section 1343(3), upon which plaintiff grounds her constitutional claim.[8]

It may be acknowledged that the service by the City of six notices, all based on the same ground, and their subsequent and final withdrawal "with prejudice" suggest bureaucratic red tape or marked inefficiency.[9] That plaintiff and her counsel are irked by such conduct is understandable, but such shortcomings on the part of government agencies do not give rise to constitutional claims in favor of those who are inconvenienced thereby.[10]

Despite the dismissal of the notice with prejudice plaintiff contends that her claim survives. Somewhat vaguely she seeks to conceptualize a liberty and property interest deprivation based upon a risk that nonetheless she may be deprived of her benefits without due process by defendants' actions and the anxiety and worry caused by receiving multiple notices and the burden and inconvenience imposed upon her in requesting and attending conferences and Fair Hearings.[11] This surely stretches the "broad and majestic terms"[12] of the liberty and property constitutional concept beyond its outer boundaries. The regulations of the City and State, and indeed the basic Social Security Act which provides for assistance grants, created "no expectancy" that recipients would be relieved from appearing at hearings conducted to decide an issue with respect to a reduction or termination of benefits. To the contrary, they created every expectancy that the authorities engaged in the administration and enforcement of the Act would be as vigilant in protecting the public fisc[13] as they are conscientious in assuring its benefits to those entitled thereto. Government reports, federal and state, refer to many instances where it is charged, and later established, that payments were made to recipients in excess of their lawful entitlements and even to instances of outright fraud and deception upon agencies charged with the administration of the various social security programs.[14] Whatever administrative

---

6. Cf. *Geduldig v. Aiello*, 417 U.S. 484, 491–92, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).

7. See *Greer v. Blum*, 462 F.Supp. 619, 623 (S.D. N.Y.1978); *Hans Piker v. D'Elia*, 78 Civ. 1088 (E.D.N.Y. Jan. 23, 1979).

8. *Andrews v. Maher*, 525 F.2d 113, 116 (2d Cir. 1975).

9. Although between May 1977 and the present, six notices to recoup were sent to plaintiff, Fair Hearings were held twice, which she complains required her to travel from her home to 80 Centre Street, New York City. The other notices were resolved at the City level by conference.

10. After the City stipulated at one Fair Hearing held on March 8, 1978, to continue payments without reduction, it appears that 2 payments of $23.40 were withheld; however, upon plaintiff's complaint and after investigation by the State the payments were made, although delayed for approximately 5 months. While the record is not entirely clear, it appears that the 5-month delay was inadvertent. In any event, it is not disputed that plaintiff is receiving her grant without reduction. Thus plaintiff's assertion that this presents a claim of denial of due process under *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) is without substance.

11. Plaintiff's Reply Memorandum, pp. 9–11.

12. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

13. Social Service officials are authorized to reduce public assistance grants in order to recoup overpayments. *See* New York Social Services Law § 106–b (McKinney's 1976).

14. *See, e. g.*, Charge of Welfare Waste Assailed in NYC Council Hearing, *N.Y. Times* 3/14/78, at 69, col. 5; Plan to Fight Fraud in Welfare

shortcomings there may be, these do not serve to immunize recipients from appearances at conferences or Fair Hearings. State and federal agencies, when issues are raised as to the validity of grants, are entitled to the testimony and appearance of the recipient, particularly so when the hearing is part of the procedure set up to afford the recipient due process.[15] This, of course, does not justify the issuance of repeated notices and the practices of which plaintiff complains whether it is due to incompetency or inefficiency. And while no constitutional right of plaintiff is violated, the State would be well advised to promulgate a rule or regulation which would eliminate the practices which have provoked this lawsuit.

Plaintiff strongly resists dismissal of her asserted constitutional claim as moot because "there is no certainty that additional notices will not be issued in the future" and that it is "likely that the plaintiff will receive adverse notices on the same issue."[16] This is mere conjecture; moreover, it is not to be assumed that the City will not adhere to and recognize the force of its withdrawal of the last notice "with prejudice" made by counsel before this Court.

■ Next, it is urged that even if the Diaz claims are moot, the action should proceed as a class action since she was a proper representative of the purported class when the action was commenced; and finally, she joins in the proposed intervenors' application that they be permitted to intervene in this action and urges that they would be proper representatives, thus avoiding any claim of mootness.[17] Thus we consider the intervention and class certification motions.

The underlying factual basis upon which the City based its proposed reduction in order to recoup payments is different in the instance of each proposed intervenor or class member. In the case of Ana Sanchez, the claim is concealment of her husband's return to the family home. In the instance of Carmen Benitez, the proposed reduction is because of "concealment of rent." In the instance of Alfreida Harris, who received babysitting fees while a student at Pace University, the reduction is claimed because the City was unaware she attended school in the evening. Margaret Rosettos' grant is sought to be eliminated because she owned a car. Proposed intervenor Beth Smith, who is a student at City College (CUNY) is the recipient of a Tuition Assistance Program and a Basic Education Opportunity Grant from the United States Government. Here the City's proposed reduction is because of "an excess income from school grants." As already noted, in all these cases multiple notices were sent, then withdrawn at the Fair Hearings, with the City stipulating to continue payments without reduction, whereupon the State noted "there is no issue to be decided."

In *Greer v. Blum*,[18] this Court declined to certify a class substantially similar to that proposed in the instant case. There the challenge was to State and City policies and practices which reduced or discontinued benefits under the AFDC program on the ground that there is a "man in the house." This Court found, as in the instant case, that the claim of the named plaintiff had been mooted and while other recipients of benefits asserted claims similar to those advanced by the plaintiff and sought intervention and class certification, the application was denied. It observed:

> While on the broadest reading the claims of the intervenors and the named plaintiff are similar, carefully read, the claims turn on particular facts and cir-

---

Offered, *N.Y. Times* 2/12/78, at 31, col. 6; Computer Uncovers 13,584 Collecting Double Benefits, *N.Y. Times* 2/8/78, at 8, col. 2.

**15.** *See* note 2, *supra*.

**16.** Supplemental Reply Memorandum on Behalf of Plaintiff and Plaintiff Intervenors, pp. 5–6.

**17.** *See Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

**18.** 462 F.Supp. 619 (S.D.N.Y.1978).

cumstances that render each intervenor's action separate, distinct and individual [19] and that the evaluation of each intervenor's constitutional and statutory claims turned on the individual facts in each case. In the instant case, while it does appear that a pattern of serving notices and later withdrawing them at a Fair Hearing was the same in the instances of Diaz and the intervenors, the reasons for withdrawal, whether because of lack of proof to sustain the reduction, the absence of a witness to support the charge, the change of a witness' information to an investigator, differ from case to case.[20] With respect to some of the intervenors the City has indicated that, based on current information, it intends to press its challenge to continued payments to the recipients. In each instance the end result must turn upon the evidence or lack of evidence to sustain the recoupment based upon the specific facts of a specific case. Accordingly, the case does not qualify for class certification and the motions for intervention and for leave to amend the complaint to include the proposed intervenors as named plaintiffs are denied.

Since the Diaz complaint, insofar as it alleges a constitutional claim, fails, her pendent jurisdiction claims of violation of the New York Social Services Law and the common law claims of abuse of process, malicious prosecution and prima facie tort are, in the exercise of the Court's discretion, also dismissed.[21]

In sum, the defendants' motion to dismiss the Diaz complaint is granted; the Diaz motion to amend her complaint is denied, as is the motion for class certification and for intervention by the proposed intervenors.

Judgment may be entered accordingly.

**19.** *Id.* at 625.

**20.** In the instant case at the Fair Hearing held on September 28, 1978, plaintiff was sworn and it was only after she denied receipt of payments from her husband as alleged in her notice that the City withdrew its notice and stipulated to continue payments.

**21.** *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).