Florence KOSTER, John Koster, Donna Koster, John Koster, Jr., Helen Koster, Janet Koster, Edward Koster, Deborah Dean, James Bassett, Lashawnda Bassett, Cory Bassett, Jamie Dean and Jasmine Dean, on their own behalves and on behalf of all others similarly situated, Plaintiffs,

v.

Cesar A. PERALES, as Commissioner of the New York State Department of Social Services, Francis T. Purcell, as Executive of the County of Nassau, and Joseph A. D'Elia, as Commissioner of the Nassau County Department of Social Services, Defendants.

No. 82 Civ. 2892.

United States District Court,
E.D. New York.

Sept. 12, 1985.

Leonard S. Clark, Vicki Lens, Hempstead, N.Y., Robert M. Hayes, Coalition for the Homeless, New York City, for plaintiffs.

Asst. Atty. Gen. Howard Zwickel, Office of Atty. Gen. of State of N.Y., New York City, Edward McCabe, Bruce J. Adams, County Atty., Nassau County, Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action brought pursuant to 42 U.S.C. § 1983 in which plaintiffs, needy families with children who reside in Nassau County, allege that defendants have either

unlawfully denied them emergency shelter or have given them only substandard shelter in violation of federal and state law. Plaintiffs seek declaratory and injunctive relief, as well as damages, costs and attorneys' fees. Familiarity with this Court's earlier denial of a motion to dismiss made by defendants D'Elia and Purcell ("the county defendants") is presumed. *See Koster v. Webb,* 598 F.Supp. 1134 (E.D.N. Y.1983).

Plaintiffs now seek certification of a class defined as follows: "all indigent families with children, eligible for emergency assistance, who live in Nassau County and who are or will be in need of emergency shelter." More specifically, plaintiffs seek certification of the following two subclasses:

> 1) Needy families with children in Nassau County who are eligible for and in need of emergency shelter for whom the defendants refuse to provide any shelter; and

> 2) Needy families with children in Nassau County who are eligible for and in need of emergency shelter for whom defendants provide only shelter which is a danger to the families' health and safety.

Plaintiffs propose the Koster family as representative of the first subclass and the Dean family as representative of the second subclass.[1] In addition, at oral argument the Court requested that the parties brief the issue of whether the Coalition for the Homeless would have standing to intervene in this action.

For the reasons set forth herein, plaintiffs' motion for certification of the above described subclasses is granted.

*Factual Background*

The class action allegations with respect to the Koster family are detailed in ¶¶ 30–43 of the Amended Complaint, and those that describe the Deans' claim are set forth in ¶¶ 44–55. Briefly, it is sufficient to

---

1. The original complaint and plaintiffs' motion for class certification initially named the Weatherly family as representative for the second subclass. During the pendency of this motion, however, plaintiffs moved for leave to substitute the Dean family for the Weatherlys. The motion was granted and plaintiffs filed an amended complaint on September 25, 1984.

note that the Kosters, a family receiving public assistance, allegedly became homeless on September 2, 1982, when their landlord evicted them in order to use the premises for members of his family. Plaintiffs allege that except for a few days in early September 1982, defendants refused to provide them with any emergency shelter. The Koster plaintiffs allege that they intermittently obtained shelter by splitting up family members and staying with relatives and by receiving limited funds from various social service agencies to pay for shelter in a motel.

The Dean family, also receiving public assistance, allegedly became homeless on July 2, 1984, when the woman who had sublet rooms to them informed them that she could no longer do so because her lease did not allow it. Plaintiffs allege that when the six members of the Dean family applied to defendants for emergency shelter, they were referred to space in the house of a friend. That housing consisted of four rooms, a kitchen and bathroom, and after the youngest member of the Dean family was born, it housed eleven people. Plaintiffs further allege that several of the Dean children spent a few nights with other families to relieve overcrowding. However, the Deans were allegedly unable to secure less crowded shelter from defendants.

To qualify for class certification under Rule 23 of the Federal Rules of Civil Procedure, the plaintiff must (1) meet the prerequisites contained in Rule 23(a) of numerosity, typicality, commonality, and adequate representation of the plaintiff class' interests by the proposed representatives and their counsel; (2) meet one of the additional requirements of Rule 23(b); and (3) satisfy the Second Circuit's additional requirement of a showing of "necessity." *See Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978);

*Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). The parties do not dispute that plaintiffs' counsel is competent to represent the plaintiff class. The defendants, however, do contend that plaintiffs fail to satisfy the other requirements of Rule 23; specifically, the county defendants urge that plaintiffs do not meet the numerosity requirement and cannot adequately represent the class, while the state defendant, NYSDSS, denies the existence of common questions of law and fact and urges that plaintiffs' claims are not typical of those of the class. In addition, both the county and state defendants argue that plaintiffs have not met the requirements of Rule 23(b). I shall examine the various aspects of plaintiffs' motion *seriatim.*

Discussion

1. *Numerosity*

Rule 23(a)(1) states that a class action may not be maintained unless "the class is so numerous that joinder of all members is impracticable." Plaintiffs' allegations of numerosity are based upon the results of surveys of social services organizations in Nassau County conducted by plaintiffs' counsel, Nassau-Suffolk Legal Services ("NSLS"). Briefly, the NSLS survey attempted to examine the contact between 130 agencies and the homeless for the period from January 1982 to February 1983.[2] Thirty organizations responded, indicating contact with some 1168 homeless families plus additional individuals.[3] With respect to the numerosity requirement, plaintiffs also rely upon a statement made by defendant D'Elia during a 1983 hearing concerning the homeless, where he stated that during 1982, defendant NCDSS made 600 referrals to emergency shelter for temporary homeless situations. Plaintiffs fur-

---

**2.** The full numerical details of the surveys and contacts documented by plaintiffs are set forth in the affidavits of Doris Hambro (Executive Director, Nassau Action Coalition); Robert M. Hayes (Counsel, National Coalition for the Homeless); Beth Polner (Staff Attorney, Nassau/Suffolk Law Services Committee, Inc.) and

Elaine Shulman (Director of Social Work, NSLS), which are annexed to plaintiff's motion papers.

**3.** Plaintiffs' moving papers indicated that a similar survey was in progress for the period October 15, 1983—January 15, 1984.

ther allege that of the approximately sixty homeless families who came to NSLS alone since June 1982 who were allegedly denied emergency shelter or given substandard shelter, some thirty would fall into each subclass.[4]

█ Challenging the allegation that plaintiffs have satisfied the numerosity requirement, the county defendants urge that the purported class has not been sufficiently defined and that, therefore, numerosity cannot be determined. These defendants suggest that because of their particular circumstances, the Kosters can only represent a class consisting of:

> Needy homeless families with children in Nassau County who are already receiving public assistance and not required to file an application for emergency assistance, and receive emergency shelter grants, but refused to accept emergency shelter in "Black" communities.

County defendants' Memorandum at 11. These defendants urge that such a class or subclass would be small, and also question why plaintiffs have not joined as plaintiffs the sixty homeless families allegedly interviewed by NSLS. The county defendants also state, however, that they handled some 1777 homeless situations in 1983.

The numerosity requirement of Rule 23(a)(1) mandates that the number of members in the proposed class be so numerous as to render joinder impracticable. This does not mean that joinder must be impossible; rather, "the court must find that the difficulty or inconvenience of joining all members makes class litigation desirable." *Northwestern National Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507, 511 (S.D.N.Y.1984). Furthermore, when considering whether to certify a class, the court should take the allegations of the merits of the case, as set forth in the complaint, to be true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). As plaintiffs correctly urge, the Second Circuit has found class certification to be appropriate

where the size of the purported class is similar to that alleged by plaintiffs here.[5] *See, e.g., Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir.1972) (approximately 70 members); *Sharon Steel Corp. v. Chase Manhattan Bank*, 88 F.R.D. 38, 44 (S.D.N.Y.1980) (87 members); *Fidelis Corp. v. Litton Industries, Inc.*, 293 F.Supp. 164, 170 (S.D.N.Y.1968) (35–70 members). *See also Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968).

In addition, as stated by the court in *Bacon v. Toia*, 437 F.Supp. 1371 (S.D.N.Y. 1977), *aff'd mem.*, 580 F.2d 1044 (2d Cir. 1978), a case in which the plaintiffs challenged certain denials of emergency assistance sought under the Aid to Families with Dependent Children ("AFDC") program:

> The requirement of Rule 23(a)(1), that the class be so numerous that joinder is impracticable, is plainly met. Although plaintiffs do not specifically allege the number of AFDC or other public assistance recipients who may encounter sudden crises necessitating application for emergency assistance, it is apparent that the total must reach well into the hundreds, perhaps thousands.

437 F.Supp. at 1380. Although in *Bacon*, the defendants did not dispute the plaintiffs' contention that some 1,200,000 individuals were receiving AFDC relief, the logic followed by that court should be applicable here, where even the county defendants' statistics reveal the existence of a large number of homeless families.

> If only a tiny fraction of these individuals should seek cash assistance, suffer the loss or theft of their AFDC grant and seek emergency assistance, or otherwise seek to replace or duplicate a public assistance grant, a sufficiently large class of applicants would be faced with the automatic and categorical denials of eligibility imposed by [the relevant statute] to make joinder impracticable. Consequent-

---

4. Polner Aff. ¶¶ 12–13; Shulman Aff. ¶¶ 3–4.

5. *I.e.,* using the 60 figure discussed *supra.*

ly, the numerosity requirement of Rule 23(a)(1) is satisfied.

*Id.* at 1381. The county defendants' claim that the Kosters can only represent a much smaller and more narrowly defined class, *supra* at 49, does not go to the numerosity requirement but to the adequacy of representation aspect, which will be further discussed below.

Finally, it is worth noting that the impracticability of joinder is even more pronounced in a case such as this where plaintiffs seek relief based upon emergent circumstances. *See, e.g., Bacon v. Toia, supra,* 437 F.Supp. at 1383 ("the very nature of an application for emergent assistance guarantees that the immediate dispute between an applicant and [an agency] will be short-lived"). Joinder is also impractical here because homeless families are frequently homeless for short periods of time; thus, the actual membership of the class is in constant flux, and class certification is the most appropriate means to test the challenged policy. *Hurley v. Toia,* 432 F.Supp. 1170, 1174 (S.D.N.Y.), *aff'd,* 573 F.2d 1291 (2d Cir.1977). For the reasons described above, I find that plaintiffs have met the numerosity requirement of Rule 23(a)(1).

### 2. *Commonality*

Rule 23(a)(2) additionally requires the existence of "questions of law or fact that are common to the class." Plaintiffs allege several common questions of law:

1) Do the Social Security Act, the New York Social Services Law and the regula-

tions promulgated thereunder require defendants to provide eligible homeless families with emergency shelter that meets applicable health and safety standards?

2) Is the State defendant required under the Social Security Act to insure uniform statewide application of its plan for providing emergency assistance to families for emergency shelter?

3) Do the equal protection clauses of the United States and New York Constitutions require defendants to provide eligible homeless families in Nassau County with the same decent emergency shelter available to eligible families elsewhere in New York State?

4) Does the summary fashion in which the County defendants deny requests for emergency shelter constitute a violation of the United States Constitution, the Social Security Act and the regulations promulgated thereunder?

Plaintiffs' Memorandum of Law at 15 (footnote omitted).[6] Plaintiffs also allege several common issues of fact:

1) Do defendants provide all eligible homeless families with emergency shelter which meets minimal lawful standards?

2) Does the State defendant supervise a uniform emergency assistance program to families throughout New York State?

3) Do the County defendants summarily deny requests of homeless families for acceptable emergency housing?

Plaintiffs' Memorandum of Law at 16 (footnotes omitted).[7]

---

**6.** Plaintiffs add:

Each of these questions of law is common to all members of each subclass as well. However, a question of law specifically applicable to the Koster subclass, which challenges the defendants' complete denial of emergency shelter, is whether the Social Security Act, the New York Social Services Law and the regulations promulgated thereunder require defendants to provide eligible homeless families with emergency shelter. A question of law specifically applicable to the [Dean] subclass, which challenges the adequacy of the shelter when it is provided, is whether those statutory and regulatory provisions require defendants to

provide emergency housing that meets certain minimal standards.

Plaintiffs' Memorandum of Law at 15 n. *.

**7.** Plaintiffs add:

In addition, a factual question common to the Koster subclass is whether defendants provide all eligible homeless families with any emergency shelter at all. Factual questions common to the [Dean] subclass concern the standards that the defendants use in providing housing for emergency referral and the physical condition of the housing to which homeless families are referred.

Plaintiffs' Memorandum of Law at 16 n. *.

The state defendant urges, with respect to both subclasses, that the issues of whether defendants improperly deny shelter or supply plaintiffs with inadequate shelter must be determined on a case by case basis. The state defendant also contends that any legal obligation of defendants with respect to either subclass depends upon whether each plaintiff family meets the eligibility requirements of the Emergency Assistance to Families Program and whether those families properly applied for emergency services.

Contrary to the suggestions of the state defendant, however, plaintiffs urge that they do *not* seek the type of individualized relief that would warrant case by case analysis and mandate the denial of class certification. Rather,

> [p]laintiffs here are challenging defendants' *policy and practice* of arbitrarily denying emergency shelter to families, without regard to eligibility and without notice, and defendants' policy and practice of referring families to emergency accommodations that do not meet minimum lawful health and safety standards. Plaintiffs do not propose to adjudicate by a class action the merits of particular denials or substandard referrals, but *rather to enjoin an unlawful practice.* The individual factors that give rise to each families' homelessness do not affect the essential factual commonality of their claims; it is the practices of the defendants that are at issue and it is those practices that the common questions of fact concern. Similarly, the legal questions common to all members of the class concern plaintiffs' claim that defendants arbitrarily deny emergency shelter, in violation of the mandate of the federal and state law.

Plaintiffs' Reply Memorandum at 5–6 (emphasis added).

 The view that plaintiffs' claims fulfill the commonality requirement of Rule 23 is supported by the decision of the Second Circuit in *Port Authority Police Benevolent Association v. Port Authority,* 698 F.2d 150 (2d Cir.1983). There, the court held that certification had been improperly denied by the district court where, as here, the plaintiffs challenged a *practice* of defendants, as opposed to the defendants' conduct with respect to each individual plaintiff. The *Port Authority* court stated:

> Apparently believing that this lawsuit seeks promotions, the District Court reasoned that entitlement to promotions *would require individualized consideration of the qualifications of each officer seeking promotion* and assessment of whether some permissible ground existed that would justify denial of promotion, apart from any protected expression. Noting that the circumstances of each officer would inevitably differ, the District Court concluded that there was no question of law or fact common to the entire class of officers. Though recognizing a First Amendment claim, the Court ruled that "plaintiff's allegations of various chills of first amendment rights do not state issues which are common to members of the proposed class."

> The District Court misperceived the nature of the claim. *The plaintiff and the class it seeks to represent do not sue to obtain promotions; they sue to prevent the suppression of protected speech.* Since it is claimed that speech has been suppressed by actual and threatened denials of promotions, the free speech claim obviously implicates the Port Authority's promotion practices. But the free speech claim can be litigated without application of *Mt. Healthy's* procedure for determining whether any one officer is entitled to a promotion. If the plaintiff can prove that the Port Authority suppressed protected expression by denying or threatening to deny promotion, some relief would be warranted.

> The factual question that plaintiff alleges is common to the class is whether the Port Authority has let the membership know that protected speech critical of the Port Authority will lessen every officer's chances of promotion. Individualized satisfaction of the *Mt. Healthy* test is

not necessary for the establishment of that fact.

*Id.* at 153 (emphasis added) (citing *Mt. Healthy City School Board v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The court continued:

> Though these circumstances will doubtless vary with respect to the PAPBA members who have spoken out, *the common factual issue remains as to whether the Port Authority is suppressing protected expression.* The plaintiff and the class it seeks to represent need not prove that every instance of criticism by a PAPBA member is protected under *Pickering; all that must be shown is a practice of suppressing speech that is protected.*

> Since plaintiff has satisfied the requirement of a common question of law or fact, Rule 23(a)(2), the denial of class certification must be reversed, and the matter returned to the District Court for further consideration of whether the remaining requirements of Rule 23 have been met.

*Id.* at 154 (emphasis added). The applicability of this reasoning to this case warrants the conclusion that plaintiffs have met the commonality requirement of Rule 23(a)(2).

### 3. *Typicality*

■ The third requirement of Rule 23 which must be fulfilled by plaintiffs seeking class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The state defendant contests plaintiffs' claim of typicality, relying on *Greer v. Blum,* 462 F.Supp. 619, 625–26 (S.D.N.Y.1978), where the court denied certification of a class " 'composed of all AFDC recipients in New York City whose grants the agency determines to reduce or discontinue ... *where it lacks reasonably sufficient evidence* to sustain the action at a state fair hearing.' " *Id.* at 625 (emphasis added). In that case, class certification was denied because the sufficiency of the evidence in each plaintiff's case would have to be evaluated sepa-

rately. Plaintiffs' argument with respect to the commonality requirement, *supra,* is equally persuasive with respect to typicality as well. Rule 23(a)(3) does not require the claims of the class members to be identical, but directs that "the disputed issue occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of their purported class." *Wilder v. Bernstein,* 499 F.Supp. 980, 992 (S.D.N.Y.1980). The plaintiffs here urge that the issue of whether the defendants have met their legal obligations to homeless families in Nassau County is central to, or typical of, the named plaintiffs' claims as well as to the claims of the members of the purported class. Plaintiffs' Reply Memorandum at 9. The state defendant urges that it would be very difficult "for *any* family to bring this action as a class action because of the differing circumstances that will usually arise with respect to the provision of emergency housing." NYSDSS Memorandum at 21 (emphasis added). However, it is precisely because the problems complained of by plaintiffs are "capable of repetition yet evading review," *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and because the circumstances of the homeless change so frequently that class-wide relief is appropriate. Because the issues raised by the named plaintiffs' claims are "central" both to their claims as well as to those of other class members, plaintiffs have met the typicality requirement of Rule 23(a)(3).

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." As noted above, none of the defendants contest the capability of plaintiffs' various counsel to represent the proposed subclasses. The county defendants urge, however, that neither named family of plaintiffs can adequately represent the interests of the subclasses due to the individualized nature of their particular problems. It is important to note, however, that these defendants specifically challenge only the ability

of the Kosters to represent the first sub-class; defendants did not criticize the Weatherlys' ability to represent the class allegedly denied adequate shelter and have not interposed any challenge to the Deans since they were substituted for the Weatherlys. Thus, I shall address only the defendants' arguments concerning the ability of the Koster family to represent the subclass allegedly denied emergency shelter altogether.

■ The county defendants' contentions in this respect point out only that the Kosters may not have been eligible for EAF at the time that they allegedly sought and were denied emergency shelter. The defendants do not, however, explain how this factor would cause the Kosters to be unable to represent their subclass adequately, *i.e.*, cause them to have interests adverse to members of the proposed subclass. In any event, neither a defense that may be asserted against a particular plaintiff nor the possibility that a plaintiff's claim may become moot will necessarily bar members of the class from obtaining the relief they seek. *See, e.g., Bacon v. Toia, supra,* 437 F.Supp. at 1382–83, where the court stated:

> In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court explained that upon certification of a class action, "the class of unnamed persons described in the certification ac-quire[s] a legal status separate from the interest asserted by [the named plain-tiff]", *id.,* at 399, 95 S.Ct. at 557, and that the interest of the class may survive that of the plaintiff and thus prevent mootness. This class interest survives even though defendants' actions argu-ably rendered the individual plaintiffs' claims moot prior to a judicial determination of the certification issue. As the *Sosna* court stated:
>
> > There may be cases in which the con-troversy involving the named plaintiffs is such that it becomes moot as to them before the district court can rea-sonably be expected to rule on a certi-fication motion. In such instances, whether the certification can be said to

"relate back" to the filing of the com-plaint may depend upon the circum-stances of the particular case and espe-cially the reality of the claim that oth-erwise the issue would evade review. *Id.* at 402, n. 11, 95 S.Ct. at 559.

There being no serious question as to the ability of either the Kosters or the Deans to represent adequately the interests of their proposed subclasses, plaintiffs have met the requirements of Rule 23(a)(4).

*5. Compliance with Rule 23(b)*

In addition to fulfilling the four aspects of Rule 23(a), plaintiffs seeking class certi-fication must satisfy the requirements of Rule 23(b)(1), (2) or (3). The plaintiffs here claim to satisfy Rule 23(b)(2), which man-dates that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with re-spect to the class as a whole." Both the county defendants and the state defendant urge that plaintiffs have not complied with Rule 23(b)(2).

■ The state defendant urges that it cannot be said to have acted or refused to act with respect to the two proposed sub-classes; rather, it claims that the county defendants are the only defendants which may be found to have so acted. This is allegedly so because under the applicable federal law, the state defendant is only required to "assure that there is a state-wide program of emergency assistance to families that satisfy federal requirements." NYSDSS Brief at 15. The state contends that the implementation of this statewide plan is delegated to the discretion of local authorities, which are the only entities ca-pable of acting or not acting on grounds generally applicable to the proposed sub-classes.

This argument, however, was previously rejected in my denial of the county defend-ants' motion to dismiss, where I found that the state defendant has assumed the re-sponsibility to provide emergency shelter

as mandated by the Social Security Act. 598 F.Supp. at 1137. Thus, if the plaintiffs can prove that the defendants do not provide emergency shelter in the manner that is required by law, the state defendant can be deemed to have "refused to act"—*i.e.*, refused to comply with federal law—on grounds generally applicable to either or both of the proposed subclasses. Therefore, a grant of declaratory or injunctive relief would cause all of the defendants to comply with federal and state law.

The state defendant also urges that the decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), bars this suit against it. *Pennhurst,* however, bars an action against a state only on claims alleging violations of state law. 104 S.Ct. at 919–20. Here, however, the state defendant is alleged to have violated federal law; thus, the state defendant's argument must fail.

■ The county defendants, on the other hand, maintain the position that class certification is unnecessary where the court is assured that the defendant will apply to the class any declaratory judgment issued in favor of an individual plaintiff. While this may be appropriate where a defendant affirmatively states that it would be bound by an adverse judgment issued to an individual plaintiff and actually withdraws the challenged policy, *see, e.g., Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), here the defendants

deny liability and deny that any unlawful policies exist or that any lawful policies are implemented in an improper manner.[8] Also, the state defendants' declared view that only the county defendants could be liable to plaintiffs renders it unlikely that the state defendant would be willing to act in accordance with a declaratory judgment issued to a particular plaintiff.

Finally, the classic case where individual relief benefits a class, making certification unnecessary, is where a law is held unconstitutional. Here, however, the plaintiffs seek to enjoin a practice or pattern of alleged unlawful activity. The defendants having made no convincing argument as to this prong of the class certification test, I find that plaintiffs have met the requirements of Rule 23(b)(2).

*6. Necessity*

■ Plaintiffs have also satisfied the requirement of necessity. Several factors that would ordinarily serve to satisfy this requirement are all present in this suit: (1) absent certification, there is a substantial danger of mootness, since the named plaintiffs may obtain adequate emergency shelter pending the conclusion of litigation, *see Greklek v. Toia,* 565 F.2d 1259, 1261 (2d Cir.1977), *cert. denied sub nom. Blum v. Toomey,* 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978); (2) this Court is able to order relief that would be effective for the entire class, *see Ram v. Blum,* 533 F.Supp. 933, 939 (S.D.N.Y.1982); and (3) should defendants fail to abide by any final

---

**8.** The court in *Bacon v. Toia, supra,* also distinguished the case before it from *Galvan:*

> Defendants urge that class relief should be found unnecessary, despite compliance with Rule 23 requirements, because the prospective effect of injunctive relief granted to the named plaintiffs prohibits the enforcement of a state statute and thus inures to the benefit of all proposed class members, citing *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974).
> However, in *Galvan v. Levine* denial of class certification was affirmed because the state not only made clear that it would be bound by an adverse judgment but in fact "withdrew the challenged policy even more fully than the

> court ultimately directed and stated it did not intend to reinstate the policy." 490 F.2d at 1261. Here there has been no assurance by the state that its welfare officials will apply the court's judgment to all similarly situated persons, and in fact there is some uncertainty as to whether it would do so. In a letter to the court dated Aug. 22, 1977, addressed in part to plaintiffs' motion for class certification, counsel for the State Commissioner asserted that "questions of fact remain as to the need for class relief *if* the State were to follow a final decision (*i.e.,* as affirmed, if an appeal were taken) as a matter of stare decisis." [emphasis added].

437 F.Supp. at 1383 n. 11.

judgment of this Court, enforcement would be made easier if all of those actually aggrieved would have standing to compel enforcement of the judgment.

Although defendants nevertheless contend that certification is unnecessary because the relief sought by the individual plaintiffs will, by necessity, benefit all of the proposed class members, as discussed *supra,* the plaintiffs here seek not only a declaratory judgment that their rights have been violated, however, but also affirmative class-wide remedies to vindicate their rights, such as orders compelling the defendants to provide them with adequate shelter. Class certification clearly would be helpful in defining the scope of such relief.

### 7. *Standing of Coalition for the Homeless to Intervene*

While the parties have vigorously debated, in their post-argument briefs, the standing of the Coalition for the Homeless to intervene in this action, the plaintiffs admittedly prefer to be granted class certification and are equally reluctant to have the Coalition intervene. *See* Plaintiffs' Memorandum on Standing at 2, 4, 12 and Reply Memorandum on Standing at 7. Plaintiffs reason that class certification would better enable plaintiffs to enforce any judgment which they could recover against the defendants, and the need for the Coalition to obtain counsel at this stage of the litigation. After reviewing the authorities cited by the parties, although I am inclined to determine that the Coalition would have standing to intervene, *see Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982), I decline to do so because there is no formal motion to intervene before me.

*Conclusion*

For all of the reasons set forth above, plaintiffs' motion for class certification is granted. I find that the definitions of the proposed subclasses are appropriate and need not be more narrowly defined.

SO ORDERED.