NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY, R.I., individually, and as parent and natural guardian of A.B., a minor child, M.W., individually, and as parent and guardian of Da.W., Di.W., Dq.W., T.H. and S.J., minor children, M.K., individually, and as parent and natural guardian of S.P., a minor child, T.K., and N.K., individually, and as a parent and natural guardian of K.K., on behalf of themselves and all those similarly situated, R.C., individually, and as parent and natural guardian of J.C., and on behalf of themselves and all those similarly situated, C.T., individually and as grand parent and natural guardian of M.W., D.M., individually and as parent and natural guardian of M.M., Plaintiffs,

v.

State of NEW YORK, New York State Education Department, Richard P. Mills, as Commissioner of Education of the State of New York; Sheila Evans–Tranumn, as Associate Commissioner of Education of the State of New York; Patricia McGuirk, as Program Manager for the Homeless of the New York State Education Department; New York State Office of Temporary and Disability Assistance, Robert Doar, as Acting Commissioner of the New York State Office of Temporary and Disability Assistance, Suffolk County Department of Social Services, Janet Demarzo, as Commissioner of the Suffolk County Department of Social Services, Dan Hickey, as Associate Commissioner of the Suffolk County Department of Social Services, and John Doe, School Districts 1–10, Defendants.

No. 04 CV 0705(ADS)(ARL).

United States District Court, E.D. New York.

Oct. 23, 2004.

Goodwin Procter LLP, by Christopher J. Garvey, Jeffrey Alan Simes, of Counsel, New York City, Long Island Advocacy Center, by Deborah R. Berger, of Counsel, Hauppauge, NY, Wasserman & Steen LLP, by Lewis M. Wasserman, of Counsel, Patchogue, NY, National Law Center on Homelessness and Poverty, by Maria Foscarinis, of Counsel, Washington, D.C., for Plaintiffs.

New York Office of The Attorney General, by Denis McEligott, Assistant Attorney General, Susan M. Connolly, Assistant Attorney General, Hauppauge, NY, for the Defendants State of New York, New York State Education Department, Richard P. Mills, Sheila Evans–Tranumn, Patricia McGuirk, New York State Office of Temporary and Disability Assistance, and Robert Doar.

Christine Malafi, Suffolk County Attorney, by Lori L. Pack, Assistant County Attorney, Hauppauge, NY, for the Defendants Suffolk County Department of Social Services, Janet Demarzo, and Dan Hickey.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action, commenced by parents of homeless children that are residing in Suffolk County, New York, seeks enforcement of the McKinney–Vento Act, 42 U.S.C. §§ 11431–35, and the Equal Protection Clause of the United States Constitution. Presently before the Court are two motions: (1) a motion by the defendants to dismiss the action; and (2) a motion by the plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), for class certification.

### I. BACKGROUND

The plaintiffs in this action are homeless children and their parents living in Suffolk County, New York. They seek declaratory and injunctive relief against the State of New York, New York State Education Department, Richard P. Mills, as Commissioner of Education of the State of New York, Sheila Evans–Tranumn, as Associate Commissioner of Education of the State of New York, Patricia McGuirk, as Program Manager for the Homeless of the New York State Education Department, New York State Office of Temporary and Disability Assistance, Robert Doar, as Acting Commissioner of the New York State Office of Temporary and Disability Assistance, Suffolk County Department of Social Services, Janet Demarzo, as Commissioner of the Suffolk County Department of Social Services, Dan Hickey, as Associate Commissioner of the Suffolk County Department of Social Services and John Doe, School Districts 1–10, (collectively the "Defendants"), for alleged violations of the McKinney–Vento Act ("McKinney Act") and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs seek to invoke the provisions of 42 U.S.C. § 1983 to enforce the terms of the McKinney Act and the Constitution.

The Plaintiffs allege that the Defendants are responsible for a systematic failure to

provide homeless children in Suffolk County, New York, access to education by failing to: (1) locate and ensure enrollment of homeless children; (2) provide uninterrupted transportation to enable homeless children to attend school; (3) provide immediate enrollment to homeless children upon becoming homeless; and (4) provide education services that are comparable to the services that nonhomeless children receive. The Plaintiffs allege that homeless children are entitled to these educational services through the provisions of the McKinney Act and the Constitution.

The proposed class representatives are six homeless families with school-age children in Suffolk County who all allege that they have faced obstacles in maintaining enrollment in school. From the allegations in the complaint, a common theme emerges. All of the children at some time became homeless and, as a consequence of their parents' misfortune, missed weeks and sometimes months of school due to failures in transportation or enrollment. For example, the W. family has four school-age children and one pre-school age child who was denied access to Head Start. After becoming homeless, the family moved from shelter to shelter, and with each move, transportation to and from school stopped, thus causing the children to miss school for weeks at a time. Another plaintiff, S.P., was out of school for more than two months while various agencies tried to determine who should provide transportation for the child. In another example, A.B., was attending school in the Middle Country Central School District until her family was placed in emergency housing in Copaigue. Both school districts refused to admit the child-Middle Country insisted she attend the Copaigue School District while Copaigue declined to admit A.B. without the proper paperwork. As a result, A.B. missed months of school.

Because a motion to dismiss is potentially dispositive, the Court will discuss that motion first, followed by the motion for class certification.

## II. DISCUSSION

### A. Motion to Dismiss

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Kaltman–Glasel v. Dooley*, 156 F.Supp.2d 225, 226 (D.Conn. 2001). The function of the Court is not to weigh the evidence that may be presented at trial but instead the Court must determine if the claims are legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985); *see also King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999). The Court must construe all reasonable inferences in favor of the plaintiff and accept the allegations contained in the claims as true. *See Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999).

In deciding a Rule 12(b)(6) motion a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken...." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993). Therefore, a court must evaluate whether the allegations in the complaint can sustain a cause of action under applicable law, and should only grant the motion to dismiss if the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998).

Actions may be brought pursuant to section 1983 against state actors to enforce rights created by federal statutes and the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2502, 65 L.Ed.2d 555 (1980). In order to seek redress through section 1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). Here, the Plaintiffs seek to redress the right of homeless children and youths to have access to the same

educational services that are available to children who are not homeless. The Plaintiffs allege that this right is found in the McKinney Act and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. Therefore, the Court must examine whether that right does exists under the McKinney Act or the Constitution.

### 1. The McKinney–Vento Act

The McKinney–Vento Act was enacted in 1987 "to provide urgently needed assistance to protect and improve the lives and safety of the homeless. . . ." Pub.L. No. 100–77, 101 Stat. 525 (codified at 42 U.S.C. § 11431 (1988)). The Act required states to assure that each child of a homeless individual and each homeless youth had access to a free and appropriate public education. 42 U.S.C. § 11431. Under the Act, Congress authorized the Secretary of Education to grant funds to the States that comply with the provisions of the Act. *Id.* § 11432.

In 2002, the McKinney Act was reauthorized as part of the No Child Left Behind Act (NCLBA). Pub.L. No. 107–110, 115 Stat. 1989. As part of the reauthorization, the McKinney Act underwent a general revision, but the purpose of the Act remained to "ensure that each child of a homeless individual and each homeless youth has equal access to the same ·free, appropriate public education, including a public preschool education, as provided to other children and youths." 42 U.S.C. § 11431 (2004). Congress stated that "[h]omelessness alone is not sufficient reason to separate students from the mainstream school environment." *Id.* Thus, "[h]omeless children and youths should have access to the education and other services" that are needed to meet "student academic achievement standards to which all students are held." *Id.*

A court's role in determining whether personal rights exist in the section 1983 context is to initially determine whether Congress intended to confer individual rights upon a class of persons. *Gonzaga University v. Doe,* 536 U.S. 273, 285, 122 S.Ct. 2268, 2276, 153 L.Ed.2d 309 (2002). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefit-

ted.'" *Id.* at 284, 122 S.Ct. at 2275 (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 692, n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *accord Rabin v. Wilson–Coker,* 362 F.3d 190 (2d Cir.2004). In addition, a court must "determine if Congress foreclosed a § 1983 remedy either expressly or impliedly through the creation of a comprehensive administrative enforcement scheme." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 783 (2d Cir.2002) (citing *Blessing,* 520 U.S. at 342, 117 S.Ct. 1353).

Legislation enacted pursuant to the spending authority of Congress must clearly manifest an "unambiguous intent" to confer individual rights. *Gonzaga,* 536 U.S. at 280, 122 S.Ct. at 2273. This standard recognizes that the typical remedy for state noncompliance with federal spending legislation is action by the Federal Government to terminate the funds, rather than a private cause of action for noncompliance. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Thus, a significant part of a court's inquiry is whether the federal agency charged with administering the funds has procedures by which individuals can complain about alleged failures by the state entrusted with those funds. *See Gonzaga,* 536 U.S. at 280, 122 S.Ct. at 2273.

In *Gonzaga,* the Supreme Court recently found that a provision in the Family Educational Rights and Privacy Act (FERPA) did not create individual rights because the focus of the statute was "two steps removed from the interests of individual students and parents." *Id.* at 287, 122 S.Ct at 2277; *see* 20 U.S.C. § 1232g(b)(1). In other words, "the statute only forbade the government from funding schools that demonstrated a 'policy or practice' of disclosing student records." *Rabin v. Wilson–Coker,* 362 F.3d 190, 201 (2d Cir.2004) (quoting *Gonzaga,* 536 U.S. at 287, 122 S.Ct. at 2277).

The Court in *Gonzaga* explained that FERPA focuses on the aggregate impact of releasing educational records, rather than being concerned with "whether the needs of any particular person have been satisfied." *Id.* at 288, 122 S.Ct. 2268. The Court noted that this was evident by the fact that recipi-

ent institutions need only "comply substantially" to receive funding. *Id.* at 288, 122 S.Ct. at 2278; *see also Suter v. Artist M.,* 503 U.S. 347, 358, 112 S.Ct. 1360, 1367, 118 L.Ed.2d 1 (1992) (holding that no enforceable right under the Adoption Assistance Act of 1980, which required States receiving funds to have a "plan" to make "reasonable efforts" to keep children out of foster homes).

The Court in *Gonzaga* recognized that in the past, spending legislation was held to confer individually enforceable rights if the provision was focused on an individual class of persons and imposed a mandatory obligation on the State. For example, in *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Court held that a provision of the Public Housing Act conferred individual rights on the ground that the statute unambiguously imposed a "mandatory [rent] limitation [on States, which] focus[ed] on the individual family and its income." *Id.* at 430, 107 S.Ct. at 773–74. In *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 522, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Court held that a reimbursement provision of the Medicare Act conferred individual rights, on the ground that the statute "impose[d] a binding obligation on States participating in the Medicaid program to adopt reasonable and adequate rates." *Wilder,* 496 U.S. at 512, 110 S.Ct. at 2518–19.

In both *Wilder* and *Wright,* "Congress left no doubt of its intent for private enforcement" because the statutes: (1) imposed a mandatory requirement on the States; (2) provided for specific entitlements; (3) conferred entitlements on specific individuals, and (4) did not provide individuals with sufficient administrative means of enforcing the requirement against States that failed to comply. *See Gonzaga,* 536 U.S. at 280–81, 122 S.Ct. at 2274.

In light of these guidelines, it is clear that Congress intended that the McKinney Act confer individually enforceable rights. Indeed, the Court of Appeals for the District of Columbia has held that the McKinney Act confers enforceable rights on homeless children. *Lampkin v. District of Columbia,* 27 F.3d 605, 611 (D.C.Cir.1994). First, the Act imposes a mandatory rather than horatory requirement on the State. The Act states that "[h]omeless children and youths *should have* access to the education and other services that such children and youths *need* ...." 42 U.S.C. § 11431 (emphasis added). In order to provide such services, States, including New York, are granted funds which

shall be used for the following:

(1) To carry out the policies set forth in section 11431 of this title in the State.

(2) To provide activities for, and services to, homeless children, including preschool-aged homeless children, and youths that enable such children and youths to enroll in, attend, and succeed in school, or, if appropriate, in preschool programs.

(3) To establish or designate an Office of Coordinator for Education of Homeless Children and Youths in the State educational agency in accordance with subsection (f) of this section.

(4) To prepare and carry out the State plan described in subsection (g) of this section.

(5) To develop and implement professional development programs for school personnel to heighten their awareness of, and capacity to respond to, specific problems in the education of homeless children and youths.

42 U.S.C.A. § 11432. These requirements are not optional and "substantial compliance" or "reasonable efforts" is insufficient under the Act.

Second, the Act provides for specific entitlements by directing local educational agencies to carry out specific activities. In particular, the local educational agency is required to:

(i) continue the child's or youth's education in the school of origin for the duration of homelessness—

(I) in any case in which a family becomes homeless between academic years or during an academic year; or

(II) for the remainder of the academic year, if the child or youth becomes permanently housed during an academic year; or

(ii) enroll the child or youth in any public school that nonhomeless students who live in the attendance area in which the child or youth is actually living are eligible to attend

42 U.S.C.A. §§ 11432(g)(3)(A). In addition, the Act specifically directs that local educational agencies—

(i) shall immediately enroll the homeless child or youth, even if the child or youth is unable to produce records normally required for enrollment, such as previous academic records, medical records, proof of residency, or other documentation.

(ii) The enrolling school shall immediately contact the school last attended by the child or youth to obtain relevant academic and other records.

(iii) If the child or youth needs to obtain immunizations, or immunization or medical records, the enrolling school shall immediately refer the parent or guardian of the child or youth to the local educational agency liaison designated under paragraph (1)(J)(ii), who shall assist in obtaining necessary immunizations, or immunization or medical records....

42 U.S.C.A. § 11432(g)(3)(C). Thus, unlike other spending provisions that do not confer individually enforceable rights, "the McKinney Act not only inform[s] the State in great detail on how its plan is to be implemented, [it] impose[s] obligations that are independent of the plan." *Lampkin*, at 611.

Third, the entitlements conferred under the Act are directed at specific individuals. Statutes that focus on specific individuals rather than policies or practices indicate Congressional intent to confer individually enforceable rights. *Gonzaga*, 536 U.S. at 287, 122 S.Ct. at 2277 (stating that FERPA's provisions were "two steps removed from the interests of individuals ..."); *see also Rabin v. Wilson–Coker*, 362 F.3d 190, 201 (2d Cir.2004) (explaining that "the statute only forbade the government from funding schools that demonstrated a 'policy or practice' of disclosing student records"). By directing local educational agencies, rather than recommending statewide policies, the Act confers entitlements to each homeless child, including: (1) the right of the parent

or guardian to choose the school of origin or the school where students enroll in the location; (2) immediate assistance in obtaining immunizations or medical records necessary for enrollment in the new school; (3) immediate enrollment in the school in which enrollment is sought; (4) comparable transportation services to and from school. *See* 42 U.S.C. § 11432(g)(3).

Finally, the Act provides no "mechanisms for the administrative enforcement of the beneficiaries' rights." *Lampkin*, 27 F.3d at 611. Under the Act, the Secretary of Education is authorized to "make grants" and "review" state plans, but is not authorized to take any enforcement for violations of the Act. 42 U.S.C. § 11434. In *Gonzaga*, the Court recognized that Congress chose to provide an enforcement mechanism in FERPA for investigating and adjudicating violations. *Gonzaga*, 536 U.S. at 288, 122 S.Ct. at 2278. The Court stated that "[t]hese administrative procedures squarely distinguish this case from *Wright* and *Wilder*, where an aggrieved individual lacked any federal review mechanism ... and further counsel against our finding a congressional intent to create individually enforceable private rights." *Id.* at 291, 122 S.Ct. at 2279. Under the McKinney Act, an aggrieved individual has no recourse against the federal agency that is granting the funds, which strongly leads to the conclusion that Congress intended to provide an individual right enforceable under § 1983.

Defendants reliance on *Association of Community Organizations for Reform Now v. New York City Dept. of Educ.*, 269 F.Supp.2d 338, 339 (S.D.N.Y.2003) ("ACORN") is misplaced. That case held that certain provisions of the No Child Left Behind Act did not create individual rights enforceable under section 1983. Although the McKinney Act was reauthorized as part of the NCLBA, the McKinney Act pre-dated the NCLBA and differs in several important aspects.

First, the NCLBA has an aggregate focus in that it is a comprehensive education reform statute aimed at strengthening schools by holding States and local education agencies accountable. *See id.* at 340. In contrast, the purpose of the McKinney Act is to

ensure that each homeless child is given an equal opportunity to access the educational system that the NCLBA strives to enhance.

Second, although both laws call for the State to adopt and implement a plan, the focus of the NCLBA is whether local educational agencies are maintaining "adequate yearly progress." 20 U.S.C. § 6316(a)(1)(A); *see ACORN,* 269 F.Supp.2d at 344 ("The provisions of the NCLBA ... focus on two entities-states and local educational agencies...."). On the other hand, the McKinney Act specifically focuses on how to ensure that each homeless child receives the same opportunity and access to education as a nonhomeless child. Congress did not include in the McKinney Act that "adequate yearly progress" would be sufficient. The Act specifically provides that homeless children "should have access to education and other services" and requires local educational agencies to ensure that children not miss school due to the misfortunes of their parents. 42 U.S.C. §§ 11431(4) & 11432(g)(3). Finally, the NCLBA expressly gives the Secretary of Education authority to impose penalties for noncompliance. 20 U.S.C. § 6311(g)(2). Under the NCLBA, "there are remedies available to the Secretary of Education to take action against a federal fund recipient who fails to comply with legal requirements imposed by a federal education statute...." *ACORN,* 269 F.Supp.2d at 342. This is in stark contrast to the McKinney Act which lacks any federal enforcement provision or individual remedy.

Thus, the McKinney Act, as previously held by *Lampkin,* evidences a clear and unambiguous intent of Congress to create individually enforceable rights. The Act provides mandatory entitlements to homeless children by clear and precise direction to state and local officials. The statute obligates State and local agencies to perform in a specific way to ensure that homeless children are provided an education on par with that of nonhomeless children. Finally, the lack of an enforcement scheme indicates that Congress intended to confer rights on a particular class of persons. Consequently, the Plaintiffs can maintain an action under sec-

tion 1983 to enforce provisions of the McKinney Act.

**2. The Equal Protection Clause**

■ The Fourteenth Amendment of the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiffs in this case claim that homeless children in Suffolk County are not receiving the same access to public school education enjoyed by nonhomeless children.

Discriminatory treatment by the government is sufficient to trigger assessment under the Equal Protection Clause. *See Lewis v. Thompson,* 252 F.3d 567, 590 (2d Cir.2001). If government action interferes with a "fundamental right" or discriminates against a "suspect class," it must be reviewed using the strict scrutiny analysis. Absent these circumstances, government action will ordinarily survive an equal protection challenge so long as the action is rationally related to a legitimate governmental purpose. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Further, in *Plyler,* the Supreme Court acknowledged that although public education is not a fundamental right granted to individuals by the Constitution, neither is it "merely some governmental 'benefit' indistinguishable from other forms of social welfare legislation." *Id.* at 221, 102 S.Ct. 2382. The Court reasoned that education was so important to the American way of life and to the function of state and local governments that any denial of education must be justified by some "substantial goal" of the State. *Id.* at 223–24, 102 S.Ct. 2382. This analysis amounts to a "heightened" or "intermediate scrutiny" with respect to government action that results in deprivation.

Since *Plyler,* the Supreme Court has declined to extend heightened scrutiny in regard to education beyond the "unique circumstances" of *Plyler. See Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988) (holding

that a public school district's charging of a user fee for bus transportation to school did not violate the Equal Protection Clause). However, the Supreme Court implied that statutes which create circumstances that involve the penalization of children for the "illegal conduct of their parents" and risk significant and enduring adverse consequences to children should be reviewed using the *Plyler* rationale. *Id.* Indeed, the Second Circuit applied the rationale of *Plyler* when it ruled that the denial of eligibility for welfare benefits to children solely because of their mothers' alien status violated the Equal Protection Clause. *Lewis v. Thompson*, 252 F.3d 567, 591 (2d Cir.2001). In determining the whether to apply heightened scrutiny, the court stated that the denial of public education would present an even more compelling case for heightened scrutiny than the postponement of welfare benefits.

In the instant case, the circumstances are significantly similar to those in *Plyler*. The Plaintiffs' contend that homeless children in Suffolk Country are not receiving the same access to public school education enjoyed by other children. Thus, taking the Plaintiffs' factual allegations as true, the Defendants appear to be penalizing these homeless children because of the misfortunes or misdeeds of their parents. Further, in exacting the penalty, the State Defendants are risking significant and enduring adverse consequences to the children by denying them access to a public education. On its face, the Plaintiffs' warrants the "heightened scrutiny" standard set forth in *Plyler*.

Under heightened scrutiny review, the Plaintiffs are not required to negate any reasonable conceivable set of facts that could provide any rational basis for the classification of the children, as required when utilizing rational basis review. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In fact, the Defendants failed to assert even one rational basis for the homeless children transportation procedures currently in place in Suffolk County. Therefore, Plaintiffs have met their burden of stating a claim under the Equal Protection Clause, which may be enforced under section 1983. As such, the De-

fendants' motion to dismiss Plaintiffs' cause of action for failing to assert a federal right under section 1983 is denied.

### B. Class Certification

In determining whether a putative class qualifies for certification, the only question is whether the requirements of Fed.R.Civ.P. 23 have been met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court assumes the allegations in the complaint to be true, and the burden is on the plaintiff to prove that the putative class meets the four threshold requirements of Rule 23(a) and satisfies the requirements of at least one of the categories enumerated in Rule 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001); *Caridad v. Metro–North Commuter RR*, 191 F.3d 283, 291 (2d Cir.1999); *Marisol A. v. Giuliani*, 126 F.3d 372, 374 (2d Cir.1997); *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 226 (S.D.N.Y.2003).

In deciding certification, courts must take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class. *See In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972)); *see also Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. May 2000). Whether the plaintiffs have stated a cause of action or will prevail on the merits is not a consideration for resolution of a motion for class certification. *See Vengurlekar*, 220 F.R.D. at 226. While the district court must engage in a "rigorous analysis" to establish whether the plaintiff has met its burden of proof as to certification, *Caridad*, 191 F.3d at 291, such a determination must not evolve into a "preliminary inquiry into the merits." *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140.

Plaintiffs seek certification of a class defined as follows:

*Class A:* All school-aged children (as defined by New York State Education Law) who, on or after September 1, 2001:(1)

have lived, are living or will live in Suffolk County, New York; and (2) during such period have been, are, or will be "homeless" as defined in the McKinney–Vento Act, 42 U.S.C. § 11434A.

and

*Class B:* All parents, guardians or persons in a parental relationship for children in Class A, who, on or after September 1, 2001:(1) have lived, are living or will live in Suffolk County, New York; and (2) during such period have been, are, or will be "homeless" as defined in the McKinney–Vento Act, 42 U.S.C. § 11434A.

Pls.' Am. Compl. ¶ 117.

In support of class certification, the Plaintiffs set forth reports, which lead to the inference that missed school days are not unique to the Plaintiffs in this action. The 2004–2006 Education of Homeless Children and Youth Program Report describes how pervasive the problem is:

> There are some school districts that have not grasped and/or acknowledged the legality of the [McKinney Act]. Consequently the gaps that exist are the same as the gaps that existed prior to the authorization of the McKinney–Vento Act due in part to the historical rise in the number of families affected by homelessness in Suffolk County. These gaps include: denials of registration/immediate attendance for school due to dispute of "homeless" declaration, lack of transportation back to the district of last attendance, inappropriate placement, no placement, lengthy gaps in the provision of services and/or placement, unfair disciplinary actions and poor, or no, access to support services. These gaps are reported in the daily requests for services received by the Social Worker responsible for the Suffolk County advocacy program via the Homeless Children and Youth Grant.

Simes Aff. Ex. A.

Plaintiffs also allege that there are hundreds of children who are homeless throughout Suffolk County. According to information from Suffolk County's Joint Task Force on Homelessness, 2,300 people and an estimated 1,400 children were living in emergency housing in November of 2002. The actual number of homeless children living in Suffolk County is unknown.

### 1. Rule 23(a)

To qualify for class certification, the plaintiff must first prove that the putative class meets the four threshold requirements of Rule 23(a):

> **(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.**

Fed.R.Civ.P. 23(a); *see also In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 132–33 (2nd Cir.2001).

#### a. Numerosity

■ Rule 23(a)(1), generally referred to as the numerosity requirement, requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticable," in this context, is not to be confused with impossible. Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be "difficult" or "inconvenient." *Vengurlekar,* 220 F.R.D. at 227 (internal quotations and citations omitted). "Plaintiffs need not establish the precise number of potential class members since courts are empowered to make 'common sense assumptions to support a finding of numerosity.'" *Nicholson v. Williams,* 205 F.R.D. 92, 98 (E.D.N.Y.2001) (quoting *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 552 (S.D.N.Y.1995)).

The Plaintiffs submit that some 2,300 residents of Suffolk County—including approximately 1,400 children—are homeless and live in emergency housing. Indeed, the submissions of the Defendants confirm that the school districts deal with hundreds of homeless children on a daily basis. But the Defendants argue that it would be practical for numerous homeless plaintiffs to commence individual suits and then have them joined because the members of the prospective class

are geographically confined to Suffolk County, New York. This arguments lack any semblance of common sense or practicality.

In *Koster v. Perales,* the court noted that impracticability of joinder is "even more pronounced" when the plaintiffs are homeless. 108 F.R.D. 46, 50 (E.D.N.Y.1985) (certifying a class of homeless families who were challenging government policies). "[H]omeless families are frequently homeless for short periods of time; thus, the actual membership of the class is in constant flux." *Id.* Similarly in the instant case, the economic status and transience of most of the potential class members makes individual suits next to impossible. Accordingly, the Court finds that the Plaintiffs adequately satisfy the numerosity requirement of Rule 23(a)(1).

### b. Commonality

■ The commonality requirement set forth in Rule 23(a)(2) requires a showing that common issues of fact or law exist and that they affect all class members. However, the individual circumstances of the class members can differ without precluding class certification. *See Vengurlekar,* 220 F.R.D. at 227. "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Id.* (internal quotations and citations omitted). Commonality is assumed where the plaintiffs seek declaratory relief as opposed to individual relief. *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey,* 698 F.2d 150, 151 (2d Cir.1983). The commonality element of Rule 23(a)(2) is considered a "minimal burden for a party to shoulder." *Lewis Tree Service, Inc.,* 211 F.R.D. 228, 231, (S.D.N.Y. 2002).

Here, the Plaintiffs have common issues of fact and law that affect all class members. Legally, the Plaintiffs challenge the failure of the Defendants to satisfy statutory and constitutional mandates to ensure homeless children are enrolled and transported to school. Factually, the Plaintiffs are similar in that they are all children who missed school in part due to the fact that they were homeless and were not enrolled in or provided adequate transportation to and from school.

The Defendants urge that the legal issue can only be decided on an individual basis because of the unique situation of each child. However, individualized relief is not what the Plaintiffs seek. The Plaintiffs are challenging how the practice and policy of the Defendants affects each individual child. Furthermore, because the proposed class members seek to enjoin a practice or policy, rather than individualized relief, commonality is assumed.

Accordingly, the Court finds that the Plaintiffs have adequately proven the existence of common issues of fact and law among the putative class in satisfaction of the commonality requirement in Rule 23(a)(2).

### c. Typicality

■ Rule 23(a)(3), also known as the typicality requirement, requires that "each class member's claims arise from the same course of events and [that] each class member makes similar legal arguments to prove [the] defendant's liability." *Vengurlekar,* 220 F.R.D. at 227. The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. *See id.* "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993); *see also Marisol A.,* 126 F.3d at 377 (holding that plaintiffs can meet the typicality requirement where "their injuries derive from a unitary course of conduct by a single system").

Here, the Plaintiffs' central issue is whether the Defendants violated the McKinney–Vento Act by failing to ensure that homeless children receive an education. The Defendants reject the notion that the Plaintiffs are typical of the putative class by pointing out the differences among each plaintiff. For example, the Defendants point out that one plaintiff has a psychiatric disability, another has attention deficit disorder, and another has emotional and social problems. However, these differences are irrelevant to the central issue, namely, that the Defendants

are not ensuring transportation or enrollment of homeless children in school.

The Court notes that "typicality, a matter closely related to commonality, is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Frontier Ins. Group, Inc. Securities Litigation,* 172 F.R.D. 31, 40 (E.D.N.Y.1997). Here, the putative class, including the Plaintiffs, put forth one claim based on the same set of facts, that is whether the Defendants have violated the McKinney Act and the Constitution due to the unfortunate fact of being homeless. Thus, the plaintiffs have proven that "the claims of the representative parties are typical of the claims or defenses of the class" and thus, have adequately satisfied the typicality requirement of Rule 23(a)(3).

### d. Adequacy of Representation

■ The Defendants urge that the named plaintiffs cannot adequately represent the interests of the class due to the individualized nature of their particular problems. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). There is "no simple test for determining if a class will be adequately represented by a named plaintiff" and "each case must be approached on an individualized basis." *In re LILCO,* 111 F.R.D. 663, 672 (E.D.N.Y.1986). In order to qualify, plaintiffs must "demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A.,* 126 F.3d at 378.

Defendants' contention, that the individualized problems of each plaintiff conflicts with the interests of the potential members of the class is unavailing. Plaintiffs seek broad based relief which would require the Defendants to ensure the education of homeless children. In this regard, the interests of the class members are identical despite the individualized problems of each plaintiff.

Defendants also allege that one of the plaintiff's families is no longer homeless, and thus cannot maintain standing in the action. However, the Defendants do not explain how this will cause a conflict of interest. "[N]either a defense that may be asserted against a particular plaintiff nor the possibility that a plaintiff's claim may become moot will necessarily bar members of the class from obtaining the relief they seek." *Koster,* 108 F.R.D. at 53 (E.D.N.Y.1985). Accordingly, the Court finds that the Plaintiffs have satisfied the adequacy of representation requirement of Rule 23(a)(4).

### 2. Rule 23(b)(2)

■ In addition to satisfying the four prerequisites established in Rule 23(a), the plaintiff must prove that the putative class is maintainable under at least one of the categories enumerated in Rule 23(b). *See In re Visa Check,* 280 F.3d at 133. Here, the Plaintiffs request certification under Rule 23(b)(2). Under that rule, an action may be maintained as a class action when the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. (b)(2).

The classic example of a class certification under Rule 23(b)(2) is where a party seeks to declare a law unconstitutional. *Koster v. Perales,* 108 F.R.D. 46, 54 (S.D.N.Y.1985). Certification is also proper where a government entity refuses to comply with federal law. *Id.* Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the relief sought will benefit the entire class. *See Nicholson v. Williams,* 205 F.R.D. 92, 99 (E.D.N.Y.2001); *see, e.g., Marisol I.,* 929 F.Supp. 662, 692 (S.D.N.Y.1996); *see also Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 58 (3d Cir.1994) (suggesting that Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief").

Defendants argue that certification under Rule 23(b) is improper due to the individualized issues among the named Plaintiffs and the putative class members. The Court does not agree that the issues of the Plaintiffs or the putative class are materially unique. Plaintiffs seek, through requested injunctive and declaratory relief, to remedy alleged system-wide abuses that potentially impact each

and every homeless child in Suffolk County, New York. In so far as the Plaintiffs ask for injunctive relief and predicate the lawsuit on the Defendants, the requirements of Rule 23(b)(2) are satisfied.

Because the plaintiff has successfully fulfilled the requirements of Rule 23(a) and Rule 23(b)(2), the Court holds that certification of the putative class is proper.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the motion by the Defendants to dismiss this action pursuant to Fed. R.Civ.P. 12(b)(6) is **DENIED,** and it is further

**ORDERED,** that the plaintiff's motion for class certification pursuant to Fed.R.Civ.P. 23 is **GRANTED** in its entirety, and it is further

**ORDERED,** that the parties are directed to proceed with the bench trial, commencing on October 27, 2004 at 9:00 a.m.

**SO ORDERED.**